IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 AUG 29 PM 3: 46

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

THOMAS & BETTS CORP.,              )
                                   )
     Plaintiff/Counter-Defendant,  )
                                   )
                                   )
v.                                 )         No. 02-2953 Ma/An
                                   )
HOSEA PROJECT MOVERS, LLC,         )
                                   )
     Defendant/Counter-Plaintiff.  )

## ORDER ON PENDING MOTIONS

This case arises from the alleged breach of an agreement by Defendant Hosea Project Movers, LLC ("Hosea") to transport and install heavy machinery.  Hosea brings counterclaims against Plaintiff Thomas & Betts Corp. ("Thomas & Betts") for breach of contract and breach of good faith arising from the same events. Before the court are four pending motions: 1) Hosea's objections, filed January 5, 2005, to the magistrate judge's order entered on December 22, 2004, 2) Hosea's motion for summary judgment, filed April 13, 2005, 3) Thomas & Betts's motion for summary judgment, filed on June 30, 2005, and 4) Hosea's objections, filed July 7, 2005, to the magistrate judge's report and recommendation entered by the clerk on June 23, 2005.[1]  The record indicates that each of

---

[1] The magistrate judge's report and recommendation was issued in response to a referral from this court of Thomas & Betts's "motion for default judgment, for dismissal of [Hosea's] counterclaim and for an award of attorney's fees," filed on February 4, 2005.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ___9-1-05___

144

these motions has received a timely response.  For the foregoing reasons, the motions for summary judgment are DENIED, and the magistrate judge's December 22 order is AFFIRMED.  In addition, the court ADOPTS the magistrate judge's June 23 report and recommendation and, therefore, GRANTS in part and DENIES in part Thomas & Betts's motion for default judgment, dismissal of Hosea's counterclaim, and attorney's fees, filed on February 4, 2005.

## I. Background

The following facts are taken from the complaint[2] and counterclaim, respectively, or are undisputed.  On February 6, 2002, Thomas & Betts entered into a written contract with Hosea ("the agreement"), in which Hosea was to assist in the transport, rigging, setup, and installation of, among other items, several 420-ton aluminum die-casting machines owned by Thomas & Betts. (Compl. ¶ 6.)  The agreement required Hosea to provide the following services: 1) all applicable rigging, millwright, electrical, and mechanical services, 2) all applicable boxing, packing, freight, and shipping charges, 3) applicable duty and transport insurance costs, and 4) setup and installation at Thomas & Betts's facility in Monterrey, Mexico.  When the agreement was executed, the machines were located at Thomas & Betts's facility in

---

[2] Thomas & Betts filed an amended complaint on January 18, 2005, which adds counts for fraudulent inducement, intentional misrepresentation, rescission, and violation of the Tennessee Consumer Protection Act. Because the amended complaint adds only the factual allegation that Hosea concealed its failure to obtain insurance, the court will also consider the factual allegations in the original complaint.

2

Boston, Massachusetts. (Id.)

On or about September 5, 2002, Hosea left one of the die-casting machines ("Machine No. 1") near Thomas & Betts's facility in Monterrey, Mexico. Hosea abandoned Machine No. 1 on a trailer, unsecured and untethered, in alleged breach of its agreement with Thomas & Betts. The next day, a subcontractor of a company called Camionera Regional attempted to move the trailer, and Machine No. 1 fell from the trailer and was totally destroyed. (Hosea's Resp. to Statement of Facts ¶¶ 12-19.) Pursuant to the agreement, Hosea provided a certificate of insurance to Thomas & Betts confirming that Hosea had obtained insurance on Thomas & Betts's equipment and machinery for their full market value. (Compl. ¶ 8.) Thomas & Betts has made demand on Hosea to pay for the loss of use and fair market value of Machine No. 1, but Hosea has refused to pay for those losses. Hosea has also refused to make a claim with the transport insurance carrier for the loss of use and destruction of Machine No. 1, despite Thomas & Betts's demand that it do so. (Id. ¶ 9.)

Hosea has partially transported a second die-casting machine owned by Thomas & Betts ("Machine No. 2") into Mexico. All customs clearances have been obtained and all duties have been paid for this machine. Machine No. 2 cleared Mexican customs on November 7, 2002, and has remained at the facility of Hosea's agent in Mexico since November 9, 2002. (Id. ¶ 12.) Hosea refuses to deliver the

3

Machine No. 2 to Thomas & Betts's Monterrey, Mexico facility until Thomas & Betts pays additional sums that Hosea claims it is due under the agreement. (Id. ¶ 13.)  Since November 9, 2002, Machine No. 2 has remained outside, exposed to the elements, on a flatbed trailer at a location in Mexico, approximately thirty minutes' travel from the Thomas & Betts facility in Monterrey, Mexico. (Id. ¶ 16.)  These conditions have compromised the proper functioning of the machine. (Id. ¶ 17.)

Hosea claims that, when it arrived at Thomas & Betts's facility in Monterrey, Thomas & Betts denied it the opportunity to set up Machine No. 1 and, instead, instructed Hosea to park the trailer carrying the machine and return later when the site was ready for setup and installation. (Counterclaim ¶ 10.)  At Thomas & Betts's request, Hosea left Machine No. 1 on its trailer. (Id. ¶ 11.)  On September 6, 2002, without informing Hosea, Thomas & Betts's employees attempted to move the machine to another part of the facility and damaged it. (Id. ¶¶ 12-13.)  Hosea contends that this was when Machine No. 1 fell off the trailer and was destroyed. (Id. ¶ 14.)

On September 6, 2002, Thomas & Betts informed Hosea of the incident and resulting damage to Machine No. 1. (Id. ¶ 15.)  Thomas & Betts told Hosea that the damage was not Hosea's responsibility and that Thomas & Betts's employees had acted recklessly or negligently in failing properly to secure the machine to the

trailer. (Id. ¶¶ 16-18.)    After this incident, both parties continued to perform under the agreement for two months. (Id. ¶ 19.)

On October 23, 2002, Thomas & Betts sent correspondence to Hosea complaining of the loss and requesting that Hosea make a claim for the loss with its insurance company.   In the same correspondence, Thomas & Betts announced its intention to offset the amount of damages for the loss of Machine No. 1 against the remaining contract price and withhold payment until it was indemnified for the loss of the machine. (Id. ¶¶ 21-22.)    On October 31, 2002, Hosea sent correspondence to Thomas & Betts denying liability for the damage and requesting that Thomas & Betts continue performing under the agreement. (Id. ¶ 23.)   Thereafter, Thomas & Betts advised that it would not make the final payment due under the agreement, and Hosea withheld final delivery pursuant to its carrier's lien and Thomas & Betts's breach of contract. (Id. ¶ 24.)    Since then, Hosea has delivered Machine No. 2 to the Monterrey facility, and Thomas & Betts has posted a $22,000 bond. Thomas & Betts now has possession of Machine No. 2. (Id. ¶ 25-26.)

## II. Jurisdiction

Thomas & Betts is a Tennessee corporation with its principal place of business in Memphis, Tennessee.   Hosea is a Kentucky limited liability company with its principal place of business in Newport, Kentucky.   The sole member of Hosea is David S. Hosea, who

5

is a citizen of Kentucky.   Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction under 28 U.S.C. § 1332.

## III. Legal Standards

### A. Appeals from the Magistrate Judge

This court may reject the magistrate judge's decision about a nondispositive matter only if that decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). See Massey v. City of Ferndale, 7 F.3d 506, 509 (6th Cir. 1993). A decision is clearly erroneous when the court "is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).  "[T]he clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable." Tri-Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999)(citing Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir. 1985).

### B. Summary Judgment

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable

to the party opposing the motion." Kochins v. Linden-Alimak, Inc.,
799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet
this burden by pointing out to the court that the respondents,
having had sufficient opportunity for discovery, have no evidence
to support an essential element of their case. See Street v. J.C.
Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary
judgment, the nonmoving party must set forth specific facts showing
that there is a genuine issue for trial. A genuine issue for trial
exists if the evidence is such that a reasonable jury could return
a verdict for the nonmoving party. See Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must
"do more than simply show that there is some metaphysical doubt as
to the material facts." Matsushita Elec. Indus. Co., Ltd. v.
Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party
may not oppose a properly supported summary judgment motion by mere
reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S.
317, 324 (1986). Instead, the nonmoving party must present
"concrete evidence supporting its claims." Cloverdale Equip. Co.
v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The
district court does not have the duty to search the record for such
evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11
(6th Cir. 1989). Nonmovants have the duty to point out specific
evidence in the record that would be sufficient to justify a jury
decision in their favor. See id.

7

## IV. Choice of Law

Hosea argues that Thomas & Betts's claims are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(a)(1), which provides a damages remedy against an interstate carrier who loses or damages goods in transport.  Thomas & Betts argues that the Carmack Amendment does not apply to its claims because 1) Hosea is not a "carrier" for purposes of the statute, 2) no bill of lading was issued, as required by the statute, 3) the transportation to be performed under the agreement had already been completed when the incidents giving rise to this action occurred, and 4) the damage to the shipment occurred in Mexico, outside the United States.

The provision of the Carmack Amendment in question reads as follows:

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of this chapter 135 [49 U.S.C. §§ 13501 et seq. or § 13531] shall issue a receipt or bill of lading for property it receives for transportation under this part [49 U.S.C. §§ 1301 et seq.].  That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 [49 U.S.C. §§ 13501 et seq. or §§ 10501 et seq.] are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702.  Failure to issue a receipt or bill of lading does not affect the liability of a carrier.  A

> delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C. § 14706(a). It is well settled that the Carmack Amendment preempts state claims "relating to the shipment of goods by interstate carriers." Toledo Ticket Co. v. Roadway Express, Inc., 133 F.3d 439, 441 (6th Cir. 1998); see also Grehan v. American Holiday Van Lines, Inc., 2005 WL 1242061 (E.D. Tenn. 2005). Moreover, the preemptive scope of the Carmack Amendment has been applied broadly. See id.

Thomas & Betts argues that Hosea was no longer engaged in the transportation of Machine No. 1. when it was damaged, because the machine had arrived at its final destination. According to Thomas & Betts's complaint, Machine No. 1 was still under the control of Hosea or its agent and had not been moved into Thomas & Betts's facility when it fell off its trailer and was destroyed. It is undisputed, however, that Tracomsa, a subcontractor of Hosea, delivered Machine No. 1 on September 5, 2002, and that it stayed at the Monterrey facility overnight. (Hosea's Resp. to Statement of Facts ¶ 9.) The next day, Salvador Aguilera, Hosea's local project manager, needed to move the trailer containing Machine No. 1. (Id. ¶ 12.) Thereafter, a company called Camionera Regional attempted to move the trailer, and Machine No. 1 was damaged in the process, as described in the complaint. (Id. ¶¶ 12-19.)

These undisputed facts show that Machine No. 1 was no longer being "shipped" when it was destroyed. Although the parties

9

dispute who was legally responsible for Machine No. 1 at that time, it is clear that, if Hosea was responsible, it was acting in its capacity as an installer, not as an interstate carrier, of equipment. Thus, Thomas & Betts's claims arising from the destruction of Machine No. 1 are not "relat[ed] to the shipment of interstate goods," so as to be governed by the Carmack Amendment. Likewise, the Carmack Amendment is not applicable to Thomas & Betts's claims arising from alleged misrepresentation in the formation of the agreement or Hosea's alleged refusal to deliver Machine No 2.

A federal district court is required to apply the "choice of law" rules of the state in which it sits. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Cole v. Mileti</u>, 133 F.3d 433, 437 (6th Cir. 1998). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." <u>Klaxon</u>, 313 U.S. at 496. Therefore, the court must decide which state's law a Tennessee court would apply to the instant case.

The agreement between Thomas & Betts and Hosea provides that it will be governed by Tennessee law. Tennessee courts will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction, absent a violation of the forum state's public policy. <u>Bright v. Spaghetti Warehouse, Inc.</u>, 1998 WL 205757, at *5 (Tenn. Ct. App. Apr. 29, 1998); <u>Arcata</u>

<u>Graphics Co. v. Heidelberg Harris, Inc.</u>, 874 S.W.2d 15, 27 (Tenn. Ct. App. 1993). Thomas & Betts has its principal place of business in Tennessee, and neither party has cited any provision in the contract that is inconsistent with Tennessee public policy. Thus, Tennesse bears a reasonable relation to the transactions in question, and the court will apply Tennessee law to Thomas & Betts's contract claims.

Tennessee courts apply the "most significant relationship" approach of the Restatement (Second) of Conflicts of Laws (the "Second Restatement") in deciding which state's law to apply to tort claims. <u>Glennon v. Dean Witter Reynolds, Inc.</u>, 83 F.3d 132, 136 (6th Cir. 1996) (citing <u>Hataway v. McKinley</u>, 830 S.W.2d 53, 59 (Tenn. 1992)). The most significant relationship test looks to: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." SECOND RESTATEMENT § 145(2) (1971). Generally, "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." <u>Hataway</u>, 830 S.W.2d at 59.

Hosea's alleged refusal to deliver Machine No. 2 occurred in Mexico. The dispute over Machine No. 2, however, arises from a contract dispute centered in Tennessee and governed by Tennessee law. Mexico would have little interest in regulating what are

11

allegedly tortious self-help measures taken by an American company to resolve a contract dispute that arose in Tennessee. Because Tennessee is "the place where the relationship ... between the parties is centered," that Restatement factor strongly supports applying Tennessee law. SECOND RESTATEMENT § 145(2)(d). Further, neither party is a citizen of Mexico or has its principal place of business there, suggesting that the third Restatement factor favors the application of Tennessee law. Id. § 145(2)(c). Because Thomas & Betts's tort claims arise directly from, and are bound up with, a contract dispute governed by Tennessee law, Tennessee has the most significant relationship to the tort claims, as well.

With the exception of Hosea's arguments about the application of the Carmack Amendment, both parties base their arguments exclusively on Tennessee law. Persuasive authority suggests that the parties' reliance weighs in favor of applying Tennessee law. See Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998)("a federal court should apply the law of the forum state where the parties have not identified a conflict between two bodies of state law which might apply to their case"); Crown Foodservice Group, Inc. v. Hughes, 1999 WL 33117269, at *4, FN 5 (S.D. Ohio 1999)(citing Echo, Inc. v. Whitson Co. Inc., 52 F.3d 702, 707 (7th Cir. 1995)).

For the foregoing reasons, the court will apply Tennessee law to Thomas & Betts's tort and contract claims.

## V. Hosea's January 5 Objections to the Magistrate Judge's Order

On December 22, 2004, the magistrate judge entered an order granting in part and denying in part Hosea's motion to compel discovery from Thomas & Betts. In particular, Hosea objects to the magistrate judge's decision that the information sought in Document Requests Nos. 8-12, about production in Thomas & Betts's Boston facility, was irrelevant. Hosea argues that this information is relevant to "test" Thomas & Betts's damages claims.

Thomas & Betts claims that, because of its lost manufacturing capacity, it was forced to outsource the manufacture of certain goods at a greater cost than it would have incurred manufacturing the goods itself with the use of Machines No. 1 and 2. As part of its claim for damages arising from the lost use of those machines, Thomas & Betts seeks "[t]he difference between the cost paid by Thomas & Betts for outsourcing the manufacturing and Thomas & Betts' standard cost of production." (Resp. to Interrogatory No. 10.) Because the machines in question were to be used at the Monterrey facility, the "standard cost of production" to be measured for purposes of this theory of damages is that of the Monterrey facility, not of the Boston facility. Thus, the magistrate judge's determination that Document Requests 8-12 are irrelevant was not clearly erroneous. For the foregoing reasons, Hosea's objection to the magistrate judge's order is DENIED, and the order is AFFIRMED.

13

## VI. Hosea's July 7 Objections to the Magistrate Judge's Report

On February 4, 2005, Thomas & Betts filed a motion for "Default Judgment, for Dismissal of [Hosea's] Counterclaim, and for an Award of Attorney's Fees." The court referred that motion to the magistrate judge for a report and recommendation and, on June 23, 2005, the magistrate judge entered a report and recommendation granting Thomas & Betts's motion in part and denying it in part. Specifically, the magistrate judge found that the appropriate sanction for Hosea's abuse of the discovery process was "that Plaintiff should be reimbursed for the costs and expenses associated with the Motion for Default Judgment." (Order at 8.)

Hosea does not dispute the merits of the magistrate judge's decision. Consequently, the court ADOPTS the report and recommendation and GRANTS in part and DENIES in part Thomas & Betts's February 4 motion. Instead, Hosea seeks a preliminary determination that it should not be required to reimburse Thomas & Betts for its expenses associated with certain filings because those filings were not "associated with the Motion for Default Judgment." Because the court had not adopted the magistrate judge's report and recommendation, Thomas & Betts has not sought the reimbursement the magistrate judge granted. Thus, Hosea's objection, to the extent that it can be construed as such, is DENIED as moot.

## VII. Hosea's Motion for Summary Judgment

Hosea seeks summary judgment on the ground that Thomas &

14

Betts's claims are preempted by the Carmack Amendment.   As discussed above, the Carmack Amendment does not apply to Thomas & Betts's claims.   Thus, Hosea's motion for summary judgment is DENIED.

## VIII. Thomas & Betts's Motion for Summary Judgment

Thomas & Betts argues that there are no genuine issues of material fact and that it is entitled to summary judgment on its complaint against Hosea.   Thomas & Betts seeks summary judgement that 1) Hosea is liable under the agreement for the destruction of Machine No. 1, 2) Hosea fraudulently induced, or alternatively, breached the agreement by misrepresenting its intentions to purchase insurance when it did not do so, and 3) Hosea is liable for breach of the agreement and/or conversion for its refusal to tender timely delivery of Machine No. 2.   Hosea claims that 1) it is not liable for the destruction of Machine No. 2 because Thomas & Betts, not Hosea, was in control of the machine when it was destroyed, 2) it purchased insurance as required by the agreement, and 3) it rightfully withheld delivery of Machine No. 2 when Thomas & Betts refused to pay under the agreement.

"Since the construction of a written contract involves legal issues, construction of the contract is particularly suited to disposition by summary judgment." Campora v. Ford, 124 S.W.3d 624, 628 (Tenn. Ct. App. 2003).   Thomas & Betts claims that Hosea's conduct is contrary to the "detailed proposal to Thomas & Betts that provided a schedule of its services – a proposal that became

an express part of the parties' written contract." (Memo. in Supp. of Mot. at 12.)   It appears, however, that Thomas & Betts has submitted only portions of the Proposal and the schedule of services contained in it.   Besides the "Recap of Project," containing estimated charges for general categories of services to be provided, Thomas & Betts's submission does not reference any services to be provided specifically to Thomas & Betts.  Rather, it contains only generalized statements about Hosea's business model that might be found in a brochure or other marketing literature. (See Mot. for. Summ. J. Ex. B.)  Additionally, discontinuity in the Bates numbers within Thomas & Betts's exhibit suggests that pages of the Proposal are missing.[3]  It is undisputed that the Proposal is incorporated by reference in the written agreement.   Because there is reason to believe that the court is without the full text of the agreement,[4] it will not render summary judgment requiring interpretation of the agreement.   Because Thomas & Betts's tort claims also require interpretation of the agreement,[5] the court will not render summary judgment on these claims.

_____

[3] It is not suggested that any party has intentionally misled the court or omitted relevant evidence.  Rather, rendering summary judgment on a contract requires reference to individual contract terms in the context of the entire agreement, and the court believes that the full text of the agreement may not be in the record.  If the court is mistaken, the parties may correct it.

[4] The Proposal is also not attached to the original or amended complaint.

[5] Thomas & Betts's claim for fraudulent inducement depends on whether, and to what extent, the agreement required Hosea to purchase insurance. Thomas & Betts's claim for conversion depends on whether the agreement required the parties to continue performing after Machine No. 1 was destroyed and whether Hosea was entitled under the agreement to withhold delivery of Machine No. 2 if Thomas & Betts ceased to perform.

16

**IX. Conclusion**

For the foregoing reasons, the magistrate judge's order entered on December 22, 2004 is AFFIRMED over Hosea's objections. The court ADOPTS the magistrate judge's report and recommendation granting in part and denying in part Thomas & Betts's February 4 motion for default judgment, dismissal of counterclaims, and attorneys fees. Hosea's motion for summary judgment is DENIED, and Thomas & Betts's motion for summary judgment is DENIED without prejudice.

So ORDERED this 26th day of August 2005.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 144 in
case 2:02-CV-02953 was distributed by fax, mail, or direct printing on
September 1, 2005 to the parties listed.

---

Patrick T. Burnett
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

M. Clark Spoden
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

W. Judd Peak
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

Oscar C. Carr
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT