FILED BY ___ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 OCT 14  AM 6: 48

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W.D. OF TN, MEMPHIS

THOMAS & BETTS CORP.,                  )
                                       )
        Plaintiff/Counter-Defendant,   )
                                       )
v.                                     )
                                       )       No. 02-2953 Ma/A
HOSEA PROJECT MOVERS, LLC,             )
                                       )
        Defendant/Counter-Plaintiff.   )
                                       )

ORDER ON PENDING MOTIONS IN LIMINE

Before the court are seven motions in limine, six filed by
Plaintiff/Counter-Defendant Thomas & Betts Corp. ("Thomas &
Betts") on September 12, 2005, and one filed by
Defendant/Counter-Plaintiff Hosea Project Movers, LLC ("Hosea")
on September 12, 2005. The motions filed by Thomas & Betts are:
(1) motion in limine to exclude evidence regarding bills of
lading, (2) motion in limine to exclude certain testimony of
Ernest Liggett, (3) motion in limine to exclude hearsay contained
in e-mail correspondence, (4) motion in limine to exclude certain
testimony of Ernest J. Liggett, Sr. which violates the parol
evidence rule, (5) motion in limine to exclude Ernest J. Liggett
Sr.'s expert report and any expert testimony by Liggett, and (6)
motion in limine to exclude certain testimony and documents
pertaining to Mexican customs and to Thomas & Betts' die casting

1

205

machines. Hosea filed a response to all motions but the sixth on September 19, 2005.

Hosea's motion in limine seeks to: 1) exclude evidence from Thomas & Betts on lost profits, 2) estop Thomas & Betts from asserting a value for Machine No. 2 greater than $30,000, and 3) preclude Thomas & Betts from receiving damages for outsourcing costs because of its failure to mitigate. Thomas & Betts filed a response to Hosea's motion in limine on September 19, 2005. Additionally, in the Joint Pretrial Order, Hosea indicates that it would object to the admission of deposition testimony from employees of Thomas & Betts in Mexico. Thomas & Betts filed a response to these objections on September 22, 2005.

## I. Background

This case arises from Hosea's alleged breach of a Rigging, Millwright, Electrical & Mechanical Purchase Agreement to provide a number of services in relocating one of Thomas & Betts' plants from Boston, Massachusetts, to Monterrey, Mexico. On February 6, 2002, Thomas & Betts entered into a written contract with Hosea ("the Agreement"), in which Hosea was to assist in the transport, rigging, setup, and installation of, among other items, several 420-ton aluminum die-casting machines owned by Thomas & Betts. (Compl. ¶ 6.) The Agreement required Hosea to provide the following services: 1) all applicable rigging, millwright, electrical, and mechanical services, 2) all applicable boxing,

packing, freight, and shipping charges, 3) applicable duty and transport insurance costs, and 4) setup and installation at Thomas & Betts' facility in Monterrey, Mexico. Pursuant to Thomas & Betts' request, Hosea provided a certificate of insurance to Thomas & Betts confirming that Hosea had obtained insurance on Thomas & Betts' equipment and machinery for their full market value. (Compl. ¶ 8.) When the Agreement was executed, the machines were located at Thomas & Betts' facility in Boston, Massachusetts. (Id.)

On September 6, 2002, Hosea delivered one of the die-casting machines ("Machine No. 2") to Thomas & Betts' facility in Monterrey, Mexico. (Compl. ¶ 7.) Allegedly at Thomas & Betts' request, Hosea left Machine No. 2 on a trailer at the Monterrey Facility and instructed a Thomas & Betts representative to inform Hosea when Machine No. 2 could be set up and installed. (Def.'s Countercl. ¶ 11.)

The next day, because Hosea's project manager did not have access to a tractor trailer, a subcontractor of a company called Camionera Regional attempted to move the trailer. When the Camionera Regional driver attempted to move Machine No. 2, it fell from the trailer and was totally destroyed. (Def.'s Countercl. ¶¶ 12-19.)

Initially, Thomas & Betts allegedly told Hosea that the damage was not Hosea's responsibility and that Thomas & Betts'

3

employees had acted recklessly or negligently in failing to secure the machine properly to the trailer. (Id. ¶¶ 16-18.) Later, Thomas & Betts demanded that Hosea pay for the loss of use and fair market value of Machine No. 2, and Hosea refused to pay.(Compl. ¶ 9.)

On October 23, 2002, Thomas & Betts sent correspondence to Hosea complaining of the loss and requesting that Hosea make a claim for the loss with its insurance company. In the same correspondence, Thomas & Betts announced its intention to offset the amount of damages for the loss of Machine No. 2 against the remaining contract price and withhold payment until it was indemnified for the loss of the machine. (Id. ¶¶ 21-22.) On October 31, 2002, Hosea sent correspondence to Thomas & Betts denying liability for the damage and requesting that Thomas & Betts continue performing under the Agreement. (Id. ¶ 23.) Thereafter, Thomas & Betts advised that it would not make the final payment due under the Agreement. In response, Hosea refused to deliver a second die-casting machine owned by Thomas & Betts ("Machine No. 14"). All customs clearances had been obtained and all duties had been paid for Machine No. 14. Machine No. 14 cleared Mexican customs on November 7, 2002, and remained at the facility of Hosea's agent in Mexico from November 9, 2002 until this lawsuit was filed. (Id. ¶ 12.) Around the time of the initial filing of this lawsuit, Hosea delivered Machine No. 14 to

the Monterrey facility, and Thomas & Betts now has possession of Machine No. 14. (Id. ¶ 25-26.)

## II. Jurisdiction

Thomas & Betts is a Tennessee corporation with its principal place of business in Memphis, Tennessee. Hosea is a Kentucky limited liability company with its principal place of business in Newport, Kentucky. The sole member of Hosea is David S. Hosea, who is a citizen of Kentucky. Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction under 28 U.S.C. § 1332.

## III. Analysis

### A. Evidence Regarding Bills of Lading

Thomas & Betts seeks to have evidence related to bills of lading issued for Machines No. 2 and 14 excluded as irrelevant under Fed. R. Evid. 401 and 402. Under Rule 402, evidence that is not relevant is inadmissible. Relevance is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Thomas & Betts argues that evidence regarding bills of lading could only be relevant to Hosea's defense under the Carmack Amendment, 49 U.S.C. § 14706(a)(1), which this court found was not applicable in its August 29, 2005 order on pending

motions. Thomas & Betts further argues that evidence of bills of lading is inadmissible because Hosea did not produce any bills of lading during discovery.

As to Thomas & Betts' claim that this evidence was not produced during discovery, the magistrate judge has found in its September 8, 2005 order denying Plaintiff's motion for a protective order and to quash deposition that Hosea was not aware that Thomas & Betts was claiming bills of lading were not issued for Machines No. 2 and 14 until after the discovery period had ended. Furthermore, as Hosea argues, evidence about bills of lading is relevant to issues beyond whether the Carmack Amendment applies in this case, such as who had control of Machine No. 2 at the time of the accident. Because evidence about bills of lading is relevant, Thomas & Betts' motion in limine to exclude this evidence is denied.

## B. Evidence Relating to September 6, 2002 Conversation with Terry Trainor

Two of Thomas & Betts' motions in limine, the motion to exclude certain testimony of Ernest Liggett and the motion to exclude hearsay contained in e-mail correspondence, deal with evidence of a telephone conversation on September 6, 2002, immediately after the accident, between Terry Trainor, a consultant for Thomas & Betts who was at the Monterrey, Mexico, plant when the accident with Machine No. 2 occurred, and Ernest

6

Liggett, a sales manager for Hosea. The conversation was allegedly overheard by Kay Beiser, a representative of BDP International, Inc., who was in Liggett's office at the time.

Thomas & Betts claims that the testimony would be inadmissible as hearsay under Fed. R. Evid. 802. Hearsay is "a statement [oral or written], other than one made by the declarant while testifying at trial or hearing, offered to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

### 1. Testimony of Ernest Liggett

Hosea argues that Liggett's testimony about the September 6, 2002 conversation between him and Trainor is a non-hearsay admission by a party opponent under Fed. R. Evid. 801(d)(2) and, therefore, is admissible. Under this rule, a statement is admissible, as if it were the party's own statement, if it is made by the party's agent or servant about a matter within the scope of his agency or employment. Fed. R. Evid. 801(d)(2)(D). Thomas & Betts contends that the statement does not fall under Rule 801(d)(2)(D) because Trainor is not an employee or representative of Thomas & Betts authorized to speak on its behalf and that, to the extent Trainor could be considered an agent of the corporation, he was not speaking within the scope of his agency because he was not involved with moving the equipment, but was only responsible for ensuring that the die casting machines were working properly.

7

Although Thomas & Betts contends that Trainor was a consultant and not an employee, Trainor's own testimony about his employment relationship with Thomas & Betts shows him to be an employee and, therefore, an agent of the corporation. From 1990 to 1999, Trainor worked for L.E. Mason, which was bought by Thomas & Betts, as a process engineer for die casting. He then continued working for Thomas & Betts in the same capacity until, a year later, his job duties expanded when he began to travel to the new facility in Monterrey, Mexico to consult on process issues there. (Trainor Dep. 9:1-10:13, Apr. 26, 2005.) There is no indication that Trainor left Thomas & Betts to work as a third-party consultant, only that his job responsibilities within the corporation expanded to include consulting. Therefore, as an employee of Thomas & Betts, Trainor is an agent or servant under Rule 801(d)(2)(D).

Furthermore, the conversation occurred within the scope of Trainor's employment. Although Trainor was a process engineer and not a manager or spokesperson for the company, Liggett asked to speak with Trainor because he needed to speak with an employee of Thomas & Betts who could explain what had happened, specifically which machine had fallen.[1] In his position as process engineer, Trainor was able to provide that information. The September 6,

---

[1] Liggett had been speaking with one of Hosea's employees, Salvador Aguilera, who was at the Monterrey facility at the time of the accident, but asked Aguilera to hand the telephone to Trainor because Liggett thought Trainor could give him more information about what had happened.

2002 conversation with Liggett was, therefore, not outside the scope of Trainor's employment and falls under Rule 801(d)(2)(D) as a non-hearsay admission by a party-opponent.

Thomas & Betts also argues that, in his conversation with Liggett, Trainor primarily relayed information provided by Salvador Aguilera, an employee of Hosea. Under Fed. R. Evid. 805, hearsay within hearsay is inadmissible if all parts of the statement do not fall within an exception to the general rule excluding hearsay. Therefore, Thomas & Betts argues that the statements in the conversation are inadmissible because the statements made by Aguilera to Trainor, which were then relayed to Liggett, are hearsay not falling within any exception.

Hosea responds by arguing that the statements from Aguilera to Trainor are present sense impressions and thus fall into an exception to the general prohibition of hearsay. Under Fed. R. Evid. 803(1), "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded. The conversation between Liggett and Trainor apparently occurred immediately after the accident while Trainor and Aguilera were standing at the site of the accident. The statements supposedly made by Aguilera to Liggett through Trainor were descriptions of what had just occurred and of the state of the machines at the time of the conversation. These statements are present sense

impressions and, thus, are admissible under an exception to the hearsay rule.

Because all parts of the statements at issue are either non-hearsay or fall within an exception to the hearsay rule, Thomas & Betts' motion in limine to exclude Liggett's testimony about the September 6, 2002 conversation between Trainor and Liggett is denied.

### 2. E-mail from Kay Beiser to Ernest Liggett

In November 2002, Ernest Liggett asked Kay Beiser, who was allegedly in his office during his telephone conversation with Terry Trainor on September 6, 2002, to send an e-mail memorializing the conversation between Trainor and Liggett. Hosea asserts that this e-mail is admissible because it is not being offered to prove the truth of the matter asserted, but merely to corroborate that the telephone conversation took place. Trainor and Thomas & Betts, however, have never denied that the conversation took place, making Hosea's justification dubious. Even if Hosea were offering the e-mail only for that purpose, it would be hearsay because it is a written statement by Beiser being offered to prove the truth of its contents, namely that Beiser listened to the September 6, 2002 conversation and can confirm that it took place.

Hosea argues in the alternative that the e-mail is admissible under Fed. R. Evid. 803(5) or 803(6). Hosea cannot,

however, lay the necessary foundation for admission under either rule. Under Rule 803(5), a recorded recollection can be read into evidence "concerning a matter about which a witness once had knowledge but now has insufficient recollection...to testify fully and accurately...." There is no showing that Beiser no longer recalls the events described in the e-mail, making Rule 803(5) inapplicable.

Under Rule 803(6), records of regularly conducted activity can be received into evidence if they are "made at or near the time by...a person with knowledge...." The records must be "kept in the course of a regularly conducted business activity," and it must be "the regular practice of that business" to make such records. The e-mail fails to meet the requirements of Rule 803(6) for several reasons. First, it was written more than two months after the conversation, not at or near the time. Second, there has been no offer of proof by Hosea that the e-mail was a record kept in the regular course of business or that it was the regular practice of business to make such records. To lay the proper foundation under Rule 803(6), Hosea would need to offer testimony that BDP employees or Hosea subcontractors memorialize all telephone conversations or all telephone conversations related to accidents. That employees of BDP or Hosea regularly send e-mails is not the same as showing that an e-mail between Beiser and Liggett is a record kept in the regular course of business.

Because the e-mail from Beiser to Liggett is hearsay that does not fall within any exception to Rule 802, Thomas & Betts' motion in limine to exclude the e-mail correspondence is granted.

### C. Parol Evidence on the Agreement's Insurance Clause

Hosea seeks to present testimony about a conversation that allegedly took place between Ernest Liggett and Matt Orr, a former purchasing manager for Thomas & Betts, before the completion of the written Agreement on the plant relocation from Boston to Monterrey. Thomas & Betts, however, argues that this evidence is inadmissible because it violates the parol evidence rule. Under that rule, "[a] binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them." Restatement (Second) of Contracts § 213(1) (1981). "However, where there exists an ambiguity in a contract, parol evidence is admissible to explain the actual agreement." Jones v. Brooks, 696 S.W.2d 885, 886 (Tenn. 1985). "The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) *as expressed*...." Guardian Life Ins. Co. v. Richardson, 129 S.W.2d 1107, 1116 (Tenn. Ct. App. 1939) (emphasis added).

Hosea argues that Paragraph 17 of the Agreement, dealing with Hosea's provision of insurance, is ambiguous because,

12

although it clearly shows the parties intended to contract for insurance, it does not discuss the geographic scope of the insurance. Thus, Hosea contends that it should be allowed to present evidence showing that Ernest Liggett had previously told Matt Orr that Hosea does not provide insurance for extraterritorial losses, i.e. losses occurring outside the United States. This conversation between Orr and Liggett allegedly took place before negotiations began on the Agreement about the move from Boston to Monterrey and in the context of negotiations for a move conducted by Hosea for Thomas & Betts from California to Tennessee. The topic apparently was never mentioned in the context of the negotiations for the Boston to Monterrey Agreement.

Regardless of the context of the alleged conversation, it is inadmissible because the Agreement is not ambiguous. It states, "Seller shall at all times during the term of this Agreement maintain [certain] types of insurance...." (Pl.'s Mem. Supp. Mot. Ex. A ¶ 17.) Hosea's claim that the words "at all times" are merely durational, meaning that Hosea was required to maintain only domestic insurance on machines that were no longer in the United States, is illogical and would necessarily render the paragraph meaningless for a portion of the term of the Agreement. The clear purpose of Paragraph 17 of the Agreement is to ensure that Hosea would maintain the required insurance for the entire

duration of the move, including the time when the machines were being moved between the Mexican border and Monterrey. The evidence that Hosea wishes to present contradicts the clear meaning of Paragraph 17 of the agreement and is, therefore, inadmissible. Thomas & Betts' motion in limine to exclude this evidence is granted.

### D. Expert Testimony by Ernest Liggett

Hosea seeks to offer its employee, Ernest Liggett, as an expert witness. Under Fed. R. Evid. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise...." The testimony Hosea seeks to offer, however, is not expert testimony. It does not involve any scientific, technical, or other specialized knowledge. Rather, Liggett's "Expert Report on the Legal Matter" lays out the facts of the case and comes to the legal conclusion that Thomas & Betts was responsible for the damage. None of the facts or conclusions in the report is beyond the understanding of the ordinary layperson. Hosea must present the facts of the case through testimony at trial, not through an "Expert Report" or expert testimony. The admission into evidence of the "Expert Report" or expert testimony by Liggett would be needlessly cumulative. Furthermore, given that the facts are not beyond the understanding of a layperson, the jurors should be allowed to

14

come to their own conclusions about the meaning of those facts. Thomas & Betts motion in limine to exclude Ernest Liggett from testifying as an expert is, therefore, granted.

### E. Evidence on Value of Machine No. 2

Both Thomas & Betts and Hosea have filed motions in limine about the valuation of Machine No. 2.

#### 1. Thomas & Betts' Motion

Thomas & Betts seeks to exclude certain documents created by Thomas & Betts to bring Machine No. 2 through Mexican customs because those documents use the book value rather than the fair market value of the machine, which Thomas & Betts asserts is permitted under Mexican law. Because the measure of damages is the fair market value, however, Thomas & Betts argues that introduction of these documents is irrelevant, and to the extent that it is relevant, it should be excluded under Fed. R. Evid. 403 because of its tendency to confuse the issues or mislead the jury.

Thomas & Betts is correct that the proper measure of damages for the destruction of personal property is generally the market value of the property at the time of the loss. See Reid v. State, 9 S.W.3d 788, 294 (Tenn. Ct. App. 1999) (inmate's civil claim for loss of personal radio); E. Allan Farnsworth, Contracts § 12.9 (3d ed. 1999) (discussing valuation in relation to breach of contract claims). It is also correct that the book value and

15

the fair market value are not equivalent and that, as a general rule, the book value is irrelevant to the issue of damages. In this case, however, the value of Machine No. 2 as written on the Mexican customs forms is relevant to Hosea's affirmative defense of estoppel.

Furthermore, the probative value of those forms is not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Thomas & Betts argues that presentation of the Mexican customs forms will allow Hosea to imply that Thomas & Betts acted improperly by using the book rather than the fair market value of Machine No. 2 on the forms. The mere admission of the forms into evidence, however, does not necessarily carry that implication. Thomas & Betts' argument that the discussion of different methods for valuing the machine will confuse and mislead the jury is also insufficient because the differences between book value and fair market value and the uses of each of these systems of valuation are not beyond the ability of an ordinary juror to understand. Thomas & Betts' motion in limine to exclude testimony and documents about the Mexican customs forms is, therefore, denied.

### 2. Hosea's Motion

Hosea argues in its own motion in limine that it relied on the value given by Thomas & Betts in the customs documents and that Thomas & Betts should, therefore, be estopped from asserting

a value for Machine No. 2 greater than the book value listed on
the documents, $30,000. Thomas & Betts has valued Machine No. 2
at $150,000-$200,000, according to its fair market value. Hosea's
motion to estop Thomas & Betts from asserting a value greater
than $30,000 for the machine is not properly filed as a motion in
limine. Hosea offers no reasons under the Federal Rules of
Evidence why evidence of the fair market value of Machine No. 2
should not be admitted, and it has not filed nor has the court
decided any motion for summary judgment on Hosea's affirmative
defense of estoppel. Therefore, although Hosea is free to
introduce evidence supporting its defense of estoppel at trial,
Hosea's motion in limine to prevent Thomas & Betts from
presenting evidence showing a value for Machine No. 2 greater
than $30,000 is denied.

### F. Thomas & Betts' Lost Profits

Hosea seeks in its motion in limine to exclude evidence
about Thomas & Betts' lost profits as speculative. Hosea further
argues that Thomas & Betts has abandoned its claim for lost
profits. Thomas & Betts asserts in response that it never sought
damages for lost profits, but only for additional costs incurred
because of the destruction of Machine No. 2 and the alleged
conversion of Machine No. 14. Hosea does not dispute the
admission of evidence about these costs. Because Thomas & Betts
makes no damage claim based on lost profits and does not seek to

introduce any evidence about lost profits, Hosea's motion in limine to exclude this evidence is denied as moot.

### G. Thomas & Betts' Failure to Mitigate

In its motion in limine, Hosea also seeks an order stating that Thomas & Betts has failed to mitigate its damages. The motion does not make clear what evidence Hosea seeks to have excluded nor does it cite any Rules of Evidence to support its motion. The motion is not a proper motion in limine, but is instead a motion for summary judgment on Hosea's affirmative defense of Thomas & Betts' failure to mitigate. Therefore, the motion is denied.

### H. Deposition Testimony of Mexican Employees of Thomas & Betts

In the Proposed Joint Pretrial Order, Hosea objects to three of Thomas & Betts' witnesses testifying by deposition. (Joint Pretrial Order 41.) All three of the witnesses, Hector Sandoval, Juan Contreras, and Hector Terrones, are citizens of Mexico, residing in Mexico. Therefore, they are outside of the court's jurisdiction and not amenable to service of process. <u>See</u> Fed. R. Civ. P. 45(b)(2). Hosea argues, however, that because they are employees of Thomas & Betts, they are not unavailable witnesses under the Rules of Civil Procedure. Those rules allow any witness at a distance greater than 100 miles from the place of trial or who is outside the United States to testify by deposition as long

as there is no evidence that the party offering the deposition caused the absence of the witness. Fed. R. Civ. P. 32(a)(3)(B).

Thomas & Betts' proposed witnesses are both farther then 100 miles from Memphis and outside the United States. Under the clear language of the rule, even a witness who is a party can testify by deposition if she meets one of the requirements listed in Rule 32(a)(3). If a party can so testify, there is no reason the employee of a party should not be able to do likewise. Furthermore, there is no evidence that Thomas & Betts has done anything to procure its witnesses' absence from trial. All three of the challenged witnesses live and work in Mexico. They were deposed in Mexico and have only infrequently, if ever, visited Thomas & Betts' headquarters in Memphis. (Pl.'s Resp. Ex. A.) Because Thomas & Betts' use of the deposition testimony of Hector Sandoval, Juan Contreras, and Hector Terrones complies with Rule 32(a)(3)(B), Hosea's objections are overruled.

**IV. Conclusion**

Thomas & Betts' motion in limine to exclude evidence regarding bills of lading is DENIED.

Thomas & Betts' motion in limine to exclude certain testimony of Ernest Liggett is DENIED.

Thomas & Betts' motion in limine to exclude hearsay contained in e-mail correspondence is GRANTED.

Thomas & Betts' motion in limine to exclude certain

testimony by Ernest J. Liggett, Sr. which violates the parol evidence rule is GRANTED.

Thomas & Betts' motion in limine to exclude Ernest J. Liggett, Sr's expert report and any expert testimony by Liggett is GRANTED.

Thomas & Betts' motion in limine to exclude certain testimony and documents pertaining to Mexican customs documents by Thomas & Betts relating to its die casting machines is DENIED.

Hosea's motion in limine to estop Thomas & Betts from asserting a value for Machine No. 2 greater than $30,000 is DENIED.

Hosea's motion in limine to exclude evidence of lost profits is DENIED as MOOT.

Hosea's motion in limine on Thomas & Betts' failure to mitigate is DENIED.

Hosea's objections to admission of the deposition testimony of Hector Sandoval, Juan Contreras, and Hector Terrones are OVERRULED.

So ordered this ____ day of October 2005.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 205 in case 2:02-CV-02953 was distributed by fax, mail, or direct printing on October 19, 2005 to the parties listed.

---

M. Clark Spoden
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

Patrick T. Burnett
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

W. Judd Peak
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

Oscar C. Carr
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT