FILED BY _AC_ D.C.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE** 05 OCT 19 AM 9: 54
**WESTERN DIVISION**

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| THOMAS & BETTS CORP., | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) |
| | ) No. 02-2953 Ma/A |
| HOSEA PROJECT MOVERS, LLC, | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |
| | ) |

**ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER AND DENYING IN**
**PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This case arises from the alleged breach by Defendant Hosea

Project Movers, LLC ("Hosea") of a Rigging, Millwright,

Electrical & Mechanical Purchase Agreement to provide a number of

services in relocating one of Plaintiff Thomas & Betts

Corporation's ("Thomas & Betts") plants from Boston,

Massachusetts to Monterrey, Mexico. Before the court is Thomas &

Betts' motion to reconsider in part the August 29, 2005 order on

pending motions. On June 30, 2005, Thomas & Betts filed a motion

for summary judgment. Hosea filed a response on July 25, 2005.

The court denied Thomas & Betts' motion for summary judgment

without prejudice on August 29, 2005.[1] On September 7, 2005,

---

[1] The August 29, 2005 Order on Pending Motions also affirmed over
Hosea's objections the magistrate judge's order entered on December 22, 2004,
adopted the magistrate judge's report and recommendation to grant in part and
deny in part Thomas & Betts' February 4 motion for default judgment, dismissal

1

208

Thomas & Betts filed its motion to reconsider. Hosea filed a response on September 19, 2005. With the permission of the court, Hosea filed a supplemental response in opposition to Thomas & Betts' motion for summary judgment on September 30, 2005.

In its August 29, 2005 order, the court specifically cited the fact that certain documents were missing from the record before the court in its dismissal of Thomas & Betts' original motion. Thomas & Betts filed its motion to reconsider to provide the court with those documents. Because the August 29, 2002 order denied Thomas & Betts' summary judgment motion without prejudice and because the motion to reconsider was filed in a timely manner, the motion to reconsider is GRANTED. For the following reasons, Thomas & Betts' motion for summary judgment is DENIED in part and GRANTED in part.

## I. Background

On February 6, 2002, Thomas & Betts entered into a written contract with Hosea ("the Agreement"), in which Hosea was to assist in the transport, rigging, setup, and installation of several 420-ton aluminum die-casting machines owned by Thomas & Betts. (Compl. ¶ 6.) The Agreement required Hosea to provide the following services: 1) all applicable rigging, millwright, electrical, and mechanical services, 2) all applicable boxing,

---

of counterclaims, and attorney fees, and denied Hosea's motion for summary judgment.

packing, freight, and shipping charges, 3) applicable duty and transport insurance costs, and 4) setup and installation at Thomas & Betts' facility in Monterrey, Mexico. Pursuant to Thomas & Betts' request, Hosea provided a certificate of insurance to Thomas & Betts confirming that Hosea had obtained insurance on Thomas & Betts' equipment and machinery for their full market value. (Compl. ¶ 8.) When the Agreement was executed, the machines were located at Thomas & Betts' facility in Boston, Massachusetts. (Id.)

On September 6, 2002, Hosea delivered one of the die-casting machines ("Machine No. 2") to Thomas & Betts' facility in Monterrey, Mexico. (Compl. ¶ 7.) Allegedly at Thomas & Betts' request, Hosea left Machine No. 2 on a trailer at the Monterrey facility and instructed a Thomas & Betts representative to inform Hosea when Machine No. 2 could be set up and installed. (Hosea's Counterclaim ¶ 11.)

The next day, because Hosea's project manager did not have access to a tractor trailer, a subcontractor of a company called Camionera Regional attempted to move the trailer. When the Camionera Regional driver attempted to move Machine No. 2, it fell from the trailer and was totally destroyed. (Hosea's Counterclaim ¶¶ 12-19.)

Initially, Thomas & Betts allegedly told Hosea that the damage was not Hosea's responsibility and that Thomas & Betts'

3

employees had acted recklessly or negligently in failing to properly secure the machine to the trailer. (Id. ¶¶ 16-18.) Later, Thomas & Betts demanded that Hosea pay for the loss of use and fair market value of Machine No. 2, and Hosea refused to pay for those losses.(Compl. ¶ 9.)

On October 23, 2002, Thomas & Betts sent correspondence to Hosea complaining of the loss and requesting that Hosea make a claim for the loss with its insurance company. In the same correspondence, Thomas & Betts announced its intention to offset the amount of damages for the loss of Machine No. 2 against the remaining contract price and withhold payment until it was indemnified for the loss of the machine. (Id. ¶¶ 21-22.) On October 31, 2002, Hosea sent correspondence to Thomas & Betts denying liability for the damage and requesting that Thomas & Betts continue performing under the Agreement. (Id. ¶ 23.) Thereafter, Thomas & Betts advised that it would not make the final payment due under the Agreement. In response, Hosea refused to deliver a second die-casting machine owned by Thomas & Betts ("Machine No. 14"). All customs clearances had been obtained and all duties had been paid for Machine No. 14. Machine No. 14 cleared Mexican customs on November 7, 2002, and remained at the facility of Hosea's agent in Mexico from November 9, 2002 until this lawsuit was filed. (Id. ¶ 12.) Since the initial filing of this lawsuit, Hosea has delivered Machine No. 14 to the Monterrey

facility, and Thomas & Betts now has possession of Machine No. 14. (Id. ¶ 25-26.)

## II. Jurisdiction and Applicable Law

Thomas & Betts is a Tennessee corporation with its principal place of business in Memphis, Tennessee. Hosea is a Kentucky limited liability company with its principal place of business in Newport, Kentucky. The sole member of Hosea is David S. Hosea, who is a citizen of Kentucky. Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction under 28 U.S.C. § 1332.

As a diversity action, the substantive law governing this case is state rather than federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Under the terms of Paragraph 21 of the Agreement, this case is governed by Tennessee law. (Pl.'s Mot. Recons. Ex. 3 ¶ 21.)

## III. Standard for Summary Judgment

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery,

5

have no evidence to support an essential element of their case.
See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.
1989).

When confronted with a properly supported motion for summary
judgment, the nonmoving party must set forth specific facts
showing that there is a genuine issue for trial. A genuine issue
for trial exists if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party. See Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing
the motion must "do more than simply show that there is some
metaphysical doubt as to the material facts." Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
The nonmoving party may not oppose a properly supported summary
judgment motion by mere reliance on the pleadings. See Celotex
Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the
nonmoving party must present "concrete evidence supporting its
claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d
934, 937 (6th Cir. 1989). The district court does not have the
duty to search the record for such evidence. See InterRoyal Corp.
v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants
have the duty to point out specific evidence in the record that
would be sufficient to justify a jury decision in their favor.
See id.

**IV. Analysis**

6

Thomas & Betts seeks summary judgment on its claim that Hosea is liable for breach of contract and on Hosea's counterclaim for breach of contract. Thomas & Betts argues that Hosea breached the Agreement by: (1) allowing Machine No. 2 to be destroyed during the installation process; (2) refusing to timely deliver Machine No. 14; and (3) failing to provide the contractually-required insurance.

**A. Destruction of Machine No. 2**

Thomas & Betts argues that, because Machine No. 2 was destroyed during the installation process, Hosea, which was contractually obligated to install the machine, is liable for the negligence of the subcontractor who was driving the tractor when the machine fell.  In support of its argument, it cites the Indemnity Clause of the Agreement, which states:

> 7.  **Indemnity.**  Seller shall at its own expense defend, indemnify, and hold harmless Purchaser...from and against any loss, claim, cost, liability..., litigation, judgment and expense, including without limitation any damage or injury to person or property, including death, resulting from or arising out of, directly or indirectly, Seller's (or Seller's contractor's, agent's, employee's or representative's) alleged or actual negligent or willful acts or omissions in [(1)] providing the Services; or (2) delivering the Equipment to Purchaser'[s] plant; or (3) the installation of the Equipment at Purchaser'[s] plant. . . .

(Pl.'s Mot. Recons. Ex. 3 ¶ 7.)

Hosea disputes Thomas & Betts' assertion that the Camionera Regional driver was its contractor, arguing that the driver was

7

not under Hosea's control. Rather, Hosea asserts that the driver

worked for one of Thomas & Betts' regular independent

contractors, was hired for this job by Thomas & Betts, and was

operating as Thomas & Betts' servant under its control.  Hosea,

therefore, contends that it cannot be held liable for the

driver's negligence under the Agreement or common law. Thomas &

Betts, however, claims that it exercised no control over the

driver at the time of the accident and that the driver was a

borrowed servant of Hosea.

In Tennessee, the common law relating to borrowed servants

is based on the Restatement of Agency. See Gaston v. Sharpe, 168

S.W.2d 784, 786 (Tenn. 1943). According to the Restatement,

> the important question is not whether or not [the allegedly
> borrowed servant] remains the servant of the general
> employer as to matters generally, but whether or not, as to
> the act in question, he is acting in the business of and
> under the direction of one or the other. It is not
> conclusive that in practice he would be likely to obey the
> directions of the general employer in case of conflict of
> orders. The question is whether it is understood between him
> and his employers that he is to remain in the allegiance of
> the first as to a specific act, or is to be employed in the
> business of and subject to the direction of the temporary
> employer as to the details of such act. *This is a question
> of fact in each case.*

Restatement (Second) of Agency § 227 cmt. a (1958) (emphasis

added).[2] "[T]he test or standard to be used in determining when

an employee is a loaned servant will be based on who has control

and whose work is being done with a greater weight being placed

_____

[2] The quoted text has not changed from the Restatement (First) of
Agency, which is quoted in Gaston.

8

on the element of control." Price v. McNabb & Wadsworth Trucking Co., 548 S.W.2d 316, 319 (Tenn. Ct. App. 1977).

In this case, both parties agree that Thomas & Betts contacted Camionera Regional to obtain a driver and tractor at the request of Salvador Aguilera, an employee of Hosea. (Pl.'s Mem. Supp. Summ. J. 15; Def.'s Mem. Opp'n Summ. J. 3.)  They also agree that Aguilera was attempting to direct the driver in order to bring the machine into Thomas & Betts' factory so that it could be unloaded from its trailer and installed on the factory floor, as Hosea had contracted to do.  Hosea further asserts, however, that Aguilera had been fighting with the driver, who would not take direction from him. Aguilera claims that he told the driver not to move the trailer until he could attach safety chains to secure Machine No. 2 but that, when he went to get these chains, the driver began moving the trailer anyway, causing the machine to fall. (Aguilera Dep. 21:15-21, 30:14—20, Apr. 19, 2005.)

Thomas & Betts is correct that, because Machine No. 2 had not yet been installed, which was Hosea's responsibility under the Agreement, Hosea *should* have had control over the driver, but determining who *should* have exercised control is not the same as determining who, if anyone, *did* exercise control. The facts, taken in the light most favorable to Hosea, show that there is a genuine issue about whether the driver understood that he was

subject to the direction of Hosea rather than Thomas & Betts. There is also a genuine issue about whether the driver was in fact subject to the direction of Hosea. Summary judgment on Thomas & Betts' breach of contract claim for the destruction of Machine No. 2 is, therefore, inappropriate and is denied.

**B. Timely Delivery of Machine No. 14**

Thomas & Betts asserts in its motion for summary judgment that Hosea breached the Agreement by refusing to deliver Machine No. 14 in an effort to force Thomas & Betts to pay the money it allegedly owed under the Agreement.[3] Hosea acknowledges that it did hold the machine temporarily, but only in "an attempt to initiate communication." (Def.'s Mem. Opp'n Summ. J. 5.) About the time this lawsuit was filed, December 12, 2002, Machine No. 14 was delivered to Thomas & Betts. (Hosea Dep. 89:14-90:8, Feb. 23, 2005.)

The version of the Agreement provided to the court does not specify a time for performance by Hosea. (Pl.'s Mot. Recons. Ex. 3.) Tennessee law provides, however, that when no time for performance is specified, "a reasonable time is implied." Minor v. Minor, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993). " What constitutes a reasonable time within which an act is to be performed...depends on the subject matter of the contract, the situation of the parties, their intention in what they

---

[3] Thomas & Betts asserts that it does not owe Hosea anything because the Agreement contains a Set-Off Clause. (Pl.'s Mem. Recons. Ex. 3 ¶ 20.)

contemplated at the time the contract was made, and the circumstances attending the performance. " 17A Am. Jur. 2d <u>Contracts</u> § 468 (quoted in <u>Minor</u>, 863 S.W.2d at 54). Reasonable time "never means indulgence in unnecessary delay," and it is generally a question of fact. <u>Id.</u>

The final die cast machine was delivered approximately three months after the accident involving Machine No. 2, and although it is clear from the filings and exhibits that both parties had initially anticipated that the machine would be delivered earlier, it is not sufficiently certain, taking the facts in the light most favorable to Hosea, that Machine No. 14 was not delivered within a reasonable time, given the existing difficulties between the parties because of the destruction of Machine No. 2. Furthermore, Thomas & Betts' decision not to pay any further amounts owing under the Agreement after the destruction of Machine No. 2 raises a question about whether Thomas & Betts had already materially breached the Agreement, freeing Hosea from its obligation to perform. Because there is a genuine issue of material fact about whether Hosea breached the Agreement by delaying the delivery of Machine No. 14, Thomas & Betts' motion for summary judgment on this issue is denied.

## C. Failure to Provide Insurance

Finally, Thomas & Betts asserts that Hosea breached the Agreement by failing to provide insurance, as required by Paragraph 17, which reads:

17. **Insurance.**   Seller shall at all times during the term of this Agreement maintain the following types of insurance in the following minimum amounts:

    A.   Worker's Compensation: Statutory Limits;

    B.   Comprehensive General Liability, including coverage for Premises/Operations, Products/Completed Operations and Contractual Liability: $2,000,000 per occurrence and in the aggregate, Bodily Injury and Property damage combined;

    C.   Automobile Liability: Bodily Injury and Property Damage combine[d];

    D.   Automobile Liability: Bodily Injury and Property Damage: $1,000,000 per occurrence.

Purchaser may require that Seller, prior to commencement of any actions or work or performance of services hereunder, deliver to Purchaser a Certificate of Insurance evidencing that the Seller has the above insurance in full force and effect and naming Purchaser and Thomas & Betts Corporation as additional insureds under the above Comprehensive General Liability and Automobile Liability Policies. . . . Purchaser, at Purchaser's cost, reserves the right to require Seller to obtain additional types of insurance coverage and/or higher coverage limits where Purchaser in its sole discretion, deems same to be appropriate.

(Pl.'s Mot. Recons. Ex. 3 ¶ 17.) In response, Hosea asserts that

the Agreement does not specify that Hosea must provide coverage

outside the United States and that the insurance clause does not

require the type of coverage, called Cargo Insurance, that would

have reimbursed Thomas & Betts for the damage to Machine No. 2,

but only requires Hosea to obtain insurance to protect Thomas &

Betts from liability to third parties.

As to the claim that the Agreement does not require Hosea to

purchase insurance extending beyond the borders of the United

States, Hosea argues that the words "at all times" are merely durational. This argument, however, would render the insurance clause meaningless for a portion of the term of the Agreement. The clear purpose of the insurance clause was to require Hosea to obtain certain types of insurance for the entire term of the Agreement with the knowledge that, for a portion of that term, Hosea would be performing its services, including the installation of the machinery, entirely outside the United States, making insurance within the United States for that portion of the term of the Agreement useless. Therefore, there is no genuine issue about whether Paragraph 17 of the Agreement required Hosea to obtain insurance in Mexico as well as the United States.

As to Hosea's second argument, whether Paragraph 17 covers the damage to the machines goes to the question of damages, not to the question of whether Hosea breached the Agreement by failing to obtain the required insurance covering both the United States and Mexico. Assuming Hosea's claim that the damage to Machine No. 2 is not covered under Comprehensive General Liability Insurance is accurate, Thomas & Betts would be entitled only to a nominal damage award because Hosea's failure to obtain insurance in Mexico would not have caused Thomas & Betts any harm. That Thomas & Betts would be entitled only to nominal damages, however, does not mean that Hosea did not breach the Agreement. See Restatement (Second) of Contracts § 346(2) (1981).

Therefore, because there is no genuine issue of material

13

fact, Thomas & Betts' motion for summary judgment on the issue of liability for breach of contract for Hosea's failure to obtain the required insurance is granted.

## V. Conclusion

Thomas & Betts' motion to reconsider is GRANTED.

Thomas & Betts' motion for summary judgment on its breach of contract claim for the destruction of Machine No. 2 is DENIED.

Thomas & Betts' motion for summary judgment on its breach of contract claim for the failure to timely deliver Machine No. 14 is DENIED.

Thomas & Betts' motion for summary judgment on its breach of contract claim for the failure to obtain the required insurance is GRANTED.

So ordered this _18th_ day of October 2005.

SAMUEL H. MAYS, JR.

UNITED STATES DISTRICT JUDGE

14

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 208 in case 2:02-CV-02953 was distributed by fax, mail, or direct printing on October 20, 2005 to the parties listed.

Patrick T. Burnett
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

Oscar C. Carr
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

M. Clark Spoden
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

W. Judd Peak
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

Honorable Samuel Mays
US DISTRICT COURT