# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

THOMAS & BETTS CORPORATION,

      Plaintiff,

vs.

                                   Civil Action No. 02-2953-Ma-A
                                   **JURY DEMANDED**

HOSEA PROJECT MOVERS, LLC,

      Defendant.

---

HOSEA PROJECT MOVERS, LLC

      Counter-Claimant,

v.

THOMAS & BETTS CORPORATION,

      Counter-Defendant.

---

## UPDATED JOINT PRETRIAL ORDER

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and the previous orders of the Court, the Pre-Trial Conferences were held by this Court on September 20, 2005, and October 13, 2005, before the Honorable Samuel H. Mays, Jr., United States District Judge, Western District of Tennessee. All parties were represented by counsel at the Pre-Trial Conferences. After discussions among the undersigned counsel with this Court of issues that

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on ___11-4-05___

236

will assist the parties and the Court in the orderly disposition the case, the Court hereby enters this Pretrial Order.

## JURISDICTION

Plaintiff/Counter-Defendant Thomas & Betts Corporation ("Thomas & Betts") and Defendant/Counter-Claimant Hosea Project Movers, LLC ("Hosea") agree that this Court has personal jurisdiction over the parties and that all claims asserted by the parties in this case arise under diversity jurisdiction.

## PENDING MOTIONS

The following are pending motions by the parties:

**A.      Motions by Plaintiff/Counter-Defendant Thomas & Betts[1]:**

1.      Thomas & Betts Corporation's Motion to Reconsider, in Part, the August 29, 2005, Order on Pending Motions Filed on June 30, 2005;

2.      Motions *in Limine*;

3.      Motion to Quash Subpoena *Duces Tecum* Issued to Thomas & Betts Corporation filed on September 19, 2005;

4.      Objections to and Appeal of Magistrate Judge's Order Denying Plaintiff's Motion for Protective Order and to Quash Deposition and Order Denying in Part and Granting in Part Plaintiff's Motion to Stay filed on September 23, 2005;

5.      Affidavit of Oscar C. Carr, III Submitted Pursuant To Magistrate Judge Anderson's Report and Recommendation as Affirmed by the Court filed on September 12, 2005 Regarding Thomas & Betts' Attorneys' Fees (Hosea has not filed a response to Mr. Carr's Affidavit.)

---

[1]      Thomas & Betts objects to Hosea's material and substantial changes made to this version of the Pre-Trial Order, for example, Hosea's addition of a new live witness, Jan Santillo, the addition of BDP International, Inc. documents, the affidavit of Joel Brown, the affidavit of William Holmes, the addition of new contentions, issues of law and fact, and the addition of new designations of the deposition testimony of Michael Pratt and Matthew Orr.

6.  Response to Hosea Project Movers, LLC's Objection in the Proposed Pretrial Order to the Admission into Evidence of the Deposition Testimony of Thomas & Betts' Employees Located in Mexico filed on September 22, 2005; and

7.  In its written requests for documents served during discovery and at the September 20, 2005, Pretrial Conference, counsel for Thomas & Betts requested that Hosea produce its financial information and documents to be used in the event Thomas & Betts' punitive damages claim is permitted to go to the jury. Hosea has not produced these documents.

**B.  Motions by Defendant/Counter-Claimant Hosea:**

1.  Motion(s) in Limine

2.  Response and Objection to the affidavit of Oscar C. Carr, III and Plaintiff's request for fees and costs.

3.  Defendant's Brief in Support of its Objection to the Admissibility of Deposition Excerpts for Employees of Plaintiff.

4.  Motion to Bifurcate Trial.

## SUMMARY OF THE CASE

This case involves two suits for breach of a contract: the initial lawsuit filed by Thomas & Betts against Hosea and the countersuit filed by Hosea against Thomas & Betts. Thomas & Betts seeks money damages from Hosea for Hosea's breach of the Rigging, Millwright, Electrical & Mechanical Purchase Agreement ("Agreement") entered into by Thomas & Betts and Hosea on February 6, 2002. In the Agreement, Hosea agreed to provide Thomas & Betts a number of services for the moving and relocation of Thomas & Betts' manufacturing plant from Boston, Massachusetts to Monterrey, Mexico.

Thomas & Betts contends that Hosea breached the Agreement in three ways: (1) Hosea breached its contractual duties and obligations regarding the installation of Die Casting Machine No. 2, when the machine was destroyed while under Hosea's direction and control at Thomas & Betts' Monterrey, Mexico plant; (2) Hosea intentionally breached its contractual duties and

obligations, including its duty of good faith and fair dealing, with regard to the delivery and installation of Die Casting Machine No. 14, when it refused to deliver the machine which amounted to Hosea's holding the machine "hostage"; and (3) Hosea failed to provide the contractually required insurance that would have covered the loss and destruction of Machine No. 2.

In addition to breach of contract, Thomas & Betts alleges that Hosea fraudulently induced Thomas & Betts into entering into the Agreement.  Hosea made intentional misrepresentations and omissions regarding the insurance coverage that Hosea would provide to protect Thomas & Betts' property during the move of the machinery from Boston to Monterrey.  Thomas & Betts seeks damages for Hosea's acts regarding not obtaining insurance coverage for all aspects of the move and during the time of Hosea's providing other services to Thomas & Betts under the Agreement.  Thomas & Betts also claims that Hosea's conduct constituted unfair and deceptive acts that violated the Tennessee Consumer Protection Act for which Thomas & Betts is entitled to damages.

Thomas & Betts has sued Hosea for breach of contract.  A part of that breach was Hosea's failure to provide *any* insurance that covered losses in Mexico.  Hosea remains liable under the Agreement because the Agreement expressly required Hosea to provide insurance, including transport insurance for Thomas & Betts' protection.  In other words, Hosea had the obligation to provide insurance that covered the value of Thomas & Betts' property during the entire project.

Thomas & Betts is not the insured under Hosea's comprehensive general liability or automobile liability policies.  Hosea did not name Thomas & Betts as an additional insured under the policies; it only provided Thomas & Betts with evidence that the policies existed through

certificates of insurance provided by its insurance broker, McGowan & Company. Hosea is the only insured under the policies and Thomas & Betts, as a third party, has made a claim against the insured, Hosea. The comprehensive general liability policy is exactly the type of policy that is designed and purchased to cover Hosea for Thomas & Betts' property losses.

Thomas & Betts also alleges that Hosea refused to deliver Die Casting Machine No. 14. Thomas & Betts claims that, by its refusal to deliver the machine as required by the Agreement, Hosea wrongfully and intentionally deprived Thomas & Betts of its right to possession and use of Machine No. 14 for several months. Thomas & Betts has sued Hosea for damages arising out of Hosea's willful and intentional exercise of dominion and control over Die Casting Machine No. 14 which constitutes the intentional tort of conversion.

Thomas & Betts alleges that as a result of Hosea's breach of the Agreement, fraudulent conduct, and violation of the Tennessee Consumer Protection Act, Thomas & Betts incurred damages which include the loss of Die Casting Machine No. 2, and the increased costs associated with hiring another manufacturing company to manufacture the components that Die Casting Machine No. 2 would have made (known as "outsourcing"). Thomas & Betts seeks $150,000 - $200,000, plus interest, from Hosea which is the fair market value of Die Casting Machine No. 2 at the time of its destruction. Thomas & Betts is also seeking $673,227, plus interest, in damages relating to its increased outsourcing costs due to the destruction of Die Casting Machine No. 2.

Thomas & Betts also contends that as a result of Hosea's breach of the Agreement, fraudulent conduct, violation of the Tennessee Consumer Protection Act, and conversion of Die Casting Machine No. 14, Thomas & Betts incurred damages which include the increased costs associated with hiring another contractor to manufacture components that would have been

manufactured by Die Casting Machine No. 14 during the time Hosea held that machine "hostage", and the costs associated with hiring another contractor to complete the move, to install and to set-up Die Casting Machine No. 14 once Hosea agreed to release it. Thomas & Betts is seeking $81,366.53, plus interest, in damages relating to its increased outsourcing costs due to Hosea's intentional refusal to deliver Die Casting Machine No. 14 and $10,288.23, plus interest, for the additional cost for movement, installation and set-up once the machine was released. In addition, Thomas & Betts is entitled to punitive damages from Hosea resulting from Hosea's conversion and intentional refusal to deliver Die Casting Machine No. 14.

Hosea contends that at all relevant times, Hosea performed its obligations under the contract with Thomas & Betts. The negligent act that damaged Machine #2 was actually committed by a driver for Camionera Regional, a subcontractor of Thomas & Betts and who was under contract with and hired by Thomas & Betts at the time that Machine #2 was damaged. The Camionera Regional driver was warned by Hosea employee Salvador Aguilera that there were no safety straps on the trailer, and to not move the trailer without first installing safety straps. The Camionera Regional driver ignored this, and when no one was present moved the trailer anyway. During the move, the machine fell off and was damaged. The acts of the Camionera Regional driver constituted an intervening act by a third party, which prevented Hosea from completing its delivery and installation of the machine. It was not any act by a Hosea employee that caused the damage to Machine #2. After Thomas & Betts' own contractor damaged Machine #2, it was factually impossible for Hosea to install the machine in the Thomas & Betts facility. Moreover, as Hosea did not damage Machine #2, but rather it was damaged by Plaintiff's own contractor, Thomas & Betts has no legal claim against Hosea.

6

Further, if Hosea is somehow liable to Thomas & Betts for the damage to Machine #2, all of Thomas & Betts' damages are limited to $30,000.   Thomas & Betts represented to government officials that the value of Machine #2 was $30,000.   As a result, Thomas & Betts derived a benefit from this representation through decreased tariff charges.   Thomas & Betts cannot now claim a different, much higher value for Machine #2 and use the courts to derive yet another benefit.

The second machine, Machine #14, was actually delivered to Thomas & Betts in proper working order, was installed at the Thomas & Betts factory, and is in production today.   The claims made by Thomas & Betts based on Machine #14 are thereby moot.   Plaintiff's claims for any outsourcing costs should also not be awarded, as Hosea properly initiated a carrier's lien on the shipment after Thomas & Betts refused to pay Hosea pursuant to their obligations under the Agreement.

Further, all of Thomas & Betts' claims regarding insurance are a red herring.   Hosea obtained and provided all insurance policies listed in the Agreement.   Further, the kind of damage alleged by Thomas & Betts – damage to Machine #2 – would not have been covered by the policies required under the Agreement, *regardless* of whether they occurred in Mexico or the United States.   Comprehensive General Liability (CGL) and Automobile Liability policies do not cover loss to machinery such as alleged by Thomas & Betts.   Simply put, the insurance policies described in the Agreement, and requested for by Thomas & Betts, do not cover this kind of loss and are not relevant to this lawsuit.

In actuality, Thomas & Betts has breached the contract with Hosea by refusing to pay the balance of the contract.   Further, Thomas & Betts has refused to pay the balance on another, unrelated contract.   Thomas & Betts still owes Hosea $127,191.00 on the original contract, plus

interest, and $22,389.59 on the unrelated contract, plus interest, for a total of $149,580.59 plus interest.  As a result, Hosea should be awarded a judgment against Thomas & Betts in this amount, and Thomas & Betts' claims should be dismissed.

## CONTENTIONS OF THE PARTIES

### A.     Contentions of Plaintiff/Counter-Defendant Thomas & Betts:

Thomas & Betts brought this breach of contract action against Hosea and seeks money damages from Hosea based upon Hosea's breach of the Rigging, Millwright, Electrical & Mechanical Purchase Agreement ("Agreement") that was entered into by Thomas & Betts and Hosea on February 2, 2002.  Under the Agreement, Hosea contracted to provide a number of moving, installation and other services necessary for the relocation of the Thomas & Betts manufacturing plant in Boston, Massachusetts to Monterrey, Mexico.  Thomas & Betts contends Hosea breached its obligations as described below.

Thomas & Betts hired Hosea based upon Hosea's representations that it was a highly skilled project mover, millwright and rigger capable of uninstalling, handling, moving and re-installing precision machinery on a "turnkey" basis and that Hosea would provide insurance coverage for Thomas & Betts' property during the move, relocation and re-installation of the machinery.  Thomas & Betts contends that Hosea materially breached the Agreement in three principal ways: (1) Hosea breached its contractual duties and obligations regarding the installation of Die Casting Machine No. 2 when the machine was destroyed while being moved under Hosea's direction and control at Thomas & Betts' Monterrey, Mexico plant; (2) Hosea intentionally breached its contractual duties and obligations, including its duty of good faith and fair dealing, with regard to the delivery and installation of Die Casting Machine No. 14 when Hosea held the machine "hostage" and intentionally refused to deliver the machine to Thomas &

Betts; and (3) Hosea failed to provide the contractually required insurance that would have covered the loss and destruction of Machine No. 2 that occurred in Mexico.

On September 6, 2002, while under Hosea's direction and control and in preparation for installation at Thomas & Betts' Monterrey plant, Die Casting Machine No. 2 was destroyed when it fell from a flatbed trailer. Hosea is responsible for the destruction of Machine No. 2. Hosea had the contractual responsibility to deliver and install Die Casting Machine No. 2 as well as all of Thomas & Betts' other machines in Thomas & Betts' Monterrey plant. Hosea's borrowed servant, a truck driver employed by a Mexican company, Camionera Regional, acting under the direction of control of Hosea's Mexican project manager, Salvador Aguilera, had control over the machine at the time of its destruction. Accordingly, Hosea is contractually liable for the total loss of Die Casting Machine No. 2.

After Die Casting Machine No. 2 was destroyed, Hosea denied any responsibility for the loss and tried to force Thomas & Betts to accept Hosea's position by holding another Thomas & Betts machine "hostage", Die Casting Machine No. 14, and refusal to deliver it to Thomas & Betts. Instead of timely installing and setting up Die Casting Machine No. 14, Hosea wrongfully instructed its Mexican subcontractor, Tracomsa, to hold the machine at Tracomsa's facility located only a few miles away from Thomas & Betts' Monterrey facility and not to deliver it to Thomas & Betts, even though Hosea had the contractual obligation to perform to deliver and install the machine.

Hosea has admitted that it acted intentionally in refusing to deliver Machine No. 14 in order to exert economic pressure on Thomas & Betts not to exercise its contractual right to set-off the loss of Machine No. 2 against any amount of money otherwise due to Hosea under the Agreement. Under the Agreement, Thomas & Betts had the right to withhold or set-off any

amount otherwise due to Hosea based upon Hosea's breach of contract, including causing the loss of Machine No. 2. Hosea acted in bad faith when after the destruction of Machine No. 2 Hosea claimed that it had a lien against Thomas & Betts' equipment, including Machine No. 14. Hosea had no lien rights in any of Thomas & Betts' equipment because under the Agreement Hosea expressly waived any right to assert a lien against Thomas & Betts' property. In addition, because of Thomas & Betts' contractual right to set-off, Hosea also had no right to assert a lien against Thomas & Betts, and this would have been true even if the Agreement had not contained Hosea's express waiver of lien rights against Thomas & Betts.

Hosea's refusal to deliver and install Thomas & Betts' Die Casting Machine No. 14 was a breach of the Agreement, and, by doing so, Hosea intentionally deprived Thomas & Betts of the machine and the right to use it for several months. Hosea's willful and intentional exercise of dominion and control over Die Casting Machine No. 14, was in defiance of Thomas & Betts' ownership rights and constitutes the intentional tort of conversion.

The Agreement required Hosea to purchase comprehensive general liability insurance in the amount of $2 million and automobile liability insurance in the amount of $1 million, naming Thomas & Betts as an additional insured. Hosea charged Thomas & Betts $17,631.00 for insurance despite the fact that Hosea had never purchased any insurance coverage for Thomas & Betts' equipment and machinery while located within Mexico. After the accident that resulted in the destruction of Thomas & Betts' Die Casting Machine No. 2, Thomas & Betts made demand upon Hosea to place its insurance carriers on notice. Hosea, however, refused to do so.

Thomas & Betts has sued Hosea for breach of contract. A part of that breach was Hosea's failure to provide *any* insurance that covered losses in Mexico. Hosea remains liable under the Agreement because the Agreement expressly required Hosea to provide insurance,

including transport insurance for Thomas & Betts' protection. In other words, Hosea had the obligation to provide insurance that covered the value of Thomas & Betts' property during the entire project.

Thomas & Betts is not the insured under Hosea's comprehensive general liability or automobile liability policies. Hosea did not name Thomas & Betts as an additional insured under the policies; it only provided Thomas & Betts with evidence that the policies existed through certificates of insurance provided by its insurance broker, McGowan & Company. Hosea is the only insured under the policies and Thomas & Betts, as a third party, has made a claim against the insured, Hosea. The comprehensive general liability policy is exactly the type of policy that is designed and purchased to cover Hosea for Thomas & Betts' property losses.

Hosea was aware of the fact that not only was it required to purchase insurance that would cover property and casualty losses to Thomas & Betts' property for the entire moving and relocation project, including within Mexico. Hosea, however, knew before the accident that destroyed Die Casting Machine No. 2 that its insurance provided absolutely no coverage for any damage or losses to Thomas & Betts' property that might occur in Mexico. Hosea intentionally and knowingly failed to disclose to and concealed from Thomas & Betts the fact that Hosea purchased no insurance policy that provided any coverage for Thomas & Betts' property within Mexico. For at least several months before the destruction of Machine No. 2, Hosea was well aware that it had no insurance coverage for losses in Mexico.

Hosea's knowing and intentional acts and omissions constitute a breach of the Agreement, intentional misrepresentation, fraudulent inducement, and a violation of the Tennessee Consumer Protection Act. Hosea, with the intent to induce Thomas & Betts to contract with Hosea, falsely represented to Thomas & Betts that it possessed and/or that it would

11

acquire the appropriate insurance that satisfied the terms and conditions of the Agreement. Hosea's representations to Thomas & Betts regarding insurance were false. Thomas & Betts reasonably and justifiably relied upon Hosea's false representations regarding its insurance coverage and was induced to accept Hosea's project proposal and enter into the Agreement. Hosea's insurance broker, McGowan & Company, Inc., told William Holmes, Hosea's executive vice-president, before the destruction of Machine No. 2 that Hosea had no insurance coverage for any losses that occurred in Mexico and that Hosea needed to purchase insurance from a company doing business in Mexico.

Thomas & Betts is a "person" entitled to recover under the Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 et seq., for Hosea's unfair and deceptive acts of (1) representing to Thomas & Betts that Hosea had insurance appropriate for the move project and (2) concealing from Thomas & Betts that Hosea did not have adequate insurance for the move project after Thomas & Betts accepted Hosea's project proposal, entered into the Agreement and permitted Hosea to move valuable and unique pieces of industrial machinery from Boston to Monterrey.

Hosea's acts and omissions in this case constitute unfair or deceptive acts or practices declared unlawful by the Consumer Protection Act. Hosea knowingly made false representations and/or omissions for the purpose of deceiving Thomas & Betts in violation of the Act, and Hosea is liable to Thomas & Betts as a result. Hosea's use of the unfair and deceptive acts and practices described herein were willful and the Court should award Thomas & Betts treble damages as provided for in Tenn. Code Ann. § 47-18-109(a)(3), plus Thomas & Betts' costs and attorney fees pursuant to Tenn. Code Ann. §47-18-109(e)(1).

As a result of Hosea's breach of the Agreement, fraudulent conduct, and violation of the Tennessee Consumer Protection Act, Thomas & Betts incurred damages which include the loss of Die Casting Machine No. 2 and the increased costs associated with hiring another manufacturing company to manufacture the components that Die Casting Machine No. 2 would have made (known as "outsourcing"). Thomas & Betts seeks $150,000 - $200,000 from Hosea which was the fair market value of Die Casting Machine No. 2 at the time of its destruction plus interest. Thomas & Betts is also seeking $673,227 plus interest in damages relating to its increased outsourcing costs due to the destruction of Die Casting Machine No. 2.

As a result of Hosea's breach of the Agreement, fraudulent conduct, violation of the Tennessee Consumer Protection Act, and conversion of Die Casting Machine No. 14, Thomas & Betts incurred damages which include the increased costs associated with hiring another contractor to manufacture components that would have been manufactured by Die Casting Machine No. 14 during the time Hosea held that machine "hostage", and the costs associated with hiring another contractor to complete the move, to install and to set-up Die Casting Machine No. 14. Thomas & Betts is seeking $81,366.53 in damages plus interest relating to its increased outsourcing costs due to Hosea's intentional refusal to deliver Die Casting Machine No. 14.

As a result of Hosea's breach of the Agreement, its failure and refusal to perform and its subsequent bad faith refusal to deliver Die Casting Machine No. 14, Thomas & Betts hired another company (CCI-MEX SA DE CV) to complete the installation and set-up of Die Cast Machine No. 14. The additional cost for services rendered by CCI-MEX was $10,288.23 plus interest. Thomas & Betts is also entitled to punitive damages from Hosea resulting from Hosea's conversion and intentional refusal to deliver Die Casting Machine No. 14.

13

In the alternative to Thomas & Betts' claim for damages resulting from Hosea's fraud and breach of contract, Thomas & Betts seeks rescission of the Agreement on the basis of Hosea's fraudulent conduct. Hosea, with the intent to induce Thomas & Betts to contract with Hosea, falsely represented to Thomas & Betts that it would acquire and/or that it possessed the appropriate insurance that satisfied the terms and conditions of the Agreement. Hosea's misrepresentation and its failure to disclose the truth concerning the lack of insurance for losses in Mexico was a material and determinative factor in Thomas & Betts' accepting Hosea's proposal, executing the Agreement with Hosea and continuing to deal with Hosea pursuant to the Agreement.

Hosea's counterclaim is based upon Hosea's claim for the alleged balance due under the Agreement and other arguments. In addition to suing for the balance allegedly owed on the Agreement, Hosea also is suing Thomas & Betts for amounts allegedly owed in an unrelated move. In that move, Hosea failed to perform properly, Thomas & Betts was damaged and Thomas & Betts properly set off its damages and refused to pay Hosea. Hosea's counterclaim is without merit. Thomas & Betts owes no money to Hosea under any theory.

**B.      Contentions of Defendant/Counter-Claimant:**

1.      Machine #2 was damaged by the acts of a contractor for Thomas & Betts, a driver for Camionera Regional, and was not damaged by any act by Hosea.

2.      Hosea did not instruct the Camionera Regional driver to move the trailer, and thus did not indirectly cause the damage to Machine #2.

3.      Hosea performed all obligations under the Agreement.

4.      The intervening act of Thomas & Betts' own contractor caused the damage, and thus Hosea cannot be liable for breach of contract.

5.     Thomas & Betts made numerous representations, including customs declarations to a governmental entity, valuing Machine #2 at $30,000.  These valuations were made by Thomas & Betts soon before Machine #2 was damaged.  As a result, Thomas & Betts should be bound to those representations and estopped from asserting otherwise.

6.     Machine #14 was delivered in proper working order, without damage, and is operational at Thomas & Betts today.

7.     Despite knowing that it could easily replace Machine #2, Thomas & Betts has decided to continually outsource its production for over three years.

8.     Thomas & Betts has failed to mitigate its damages, if any.

9.     Hosea's temporary hold of Machine #14 during transport was a proper and valid exercise of its carrier's lien, and was only prompted when Thomas & Betts notified Hosea that it would not honor its own obligations under the Agreement.

10.     Thomas & Betts first breached the Agreement by refusing to pay Hosea for services rendered.

11.     Thomas & Betts owes a total of $149,580.59 plus interest to Hosea under two contracts that it refuses to pay.

12.     The provisions of the Agreement do not require Hosea to purchase insurance coverage for the acts of third parties in Mexico.  Hosea obtained and purchased all requisite insurance policies required by the Agreement.

13.     The insurance policies required under the Agreement would not cover the damages alleged by Thomas & Betts, regardless of whether it occurred in Mexico or the United States.

14. The Agreement was drafted by Thomas & Betts, a multi-national corporation with sophisticated in-house counsel, and thus should be construed against Plaintiff.

15. Thomas & Betts is estopped from asserting a breach of contract, as its own conduct prevented Hosea from performing under the Agreement.

16. Hosea's performance under the Agreement is excused under the theories of impossibility, as the property that was the subject of the Agreement (Machine #2) was damaged by Thomas & Betts' own contractor, thereby preventing Hosea from installing the machine.

## STATEMENT OF UNCONTESTED FACTS[2]

1. Thomas & Betts and Hosea entered into a Rigging, Millwright, Electrical & Mechanical Purchase Agreement (the "Agreement") on February 2, 2002. Hosea contracted to provide a number of services relating to the relocation of a Thomas & Betts manufacturing plant from Boston, Massachusetts to Monterrey, Mexico.

2. The Agreement requires that Hosea provide disassembly, rigging, millwright, electrical, mechanical, setup and installation services for certain items to be relocated from Boston to Monterrey, such as numerous aluminum die casting machines, including Die Casting Machines Nos. 2 and 14.

3. Paragraph 2 of the Agreement provides that the purchase price includes, "2.1, all applicable rigging, millwright, electrical and mechanical services; 2.2, all applicable boxing, packing, freight and shipping charges; 2.3, applicable duty and transport insurance costs; and 2.4 setup and installation at Purchaser's facility."

---

[2] Thomas & Betts has included certain facts related to the non-applicability of the Carmack Amendment. These facts are included as a result of Hosea's recent assertion in the telephone hearing with Magistrate Judge Anderson that Hosea intended to rely upon the Carmack Amendment despite the Court's ruling in its Order on Pending Motions that the Carmack Amendment does not apply in this case as a matter of law.

4.      Tracomsa delivered Machine No. 2 on September 5, 2002, after, Salvador Aguilera had left the Thomas & Betts facility for the day.

5.      On September 6, 2002, Mr. Aguilera needed to move the trailer containing Die Casting Machine No. 2, but he did not have a tractor and driver to move the trailer.

6.      Mr. Aguilera left the Camionera Regional driver with his tractor hooked to the trailer and went inside the Thomas & Betts' plant where Machine No. 2 was to be installed. The Camionera Regional driver then began moving the trailer without securing Machine No. 2 with straps or chains.

7.      Under the Agreement, Hosea was required to provide for the transport of Aluminum Die Casting Machine No. 14 to Thomas & Betts' Monterrey facility.

8.      The pedimento or pediment for Machine No. 2 does not mention Hosea, and it is not signed by Hosea or by any agent of Hosea.

9.      David Hosea has no personal knowledge of what occurred at Thomas & Betts' Monterrey facility on September 5 and 6, 2002.

10.      William Holmes has no personal knowledge of what occurred at Thomas & Betts' Monterrey facility on September 5 and 6, 2002.

11.      In its January 17, 2002, written proposal materials provided to Thomas & Betts by Hosea regarding the Monterrey relocation project, Hosea made the following representations:

> (a)      As we discussed with you we perform project such ass [sic] yours worldwide and have been working in Mexico with our own people over three years.   What sets Hosea apart from other companies is that we are capable of performing complete turnkey plant relocations using all of our own personnel.  We employ our own: fleet and have our own boxing, crating and specialized packing company.   We are a complete project mover.   We eliminate the subcontracting.  One source one contact throughout the entire project.

17

(b) "Hosea Project Movers has over 100 years of experience moving machinery throughout the world."

(c) Under the heading "Why Use Hosea Project Movers", Hosea represents that "[o]ur insurance pays direct damage and not 50 cents per CWT. Not many companies offer this type of coverage."

12.     In its Thomas & Betts Project Proposal Recap of Project, Hosea included in its bid price breakdown a line item entry for insurance in the amount of $17,631.00.

13.     In its Project Proposal package provided to Thomas & Betts, under the heading "Hosea Project Movers Insurance Coverages", Hosea identified general liability, auto and truck liability, motor truck cargo, and workmens' compensation insurance coverages. Hosea also stated that a certificate of insurance will be provided upon the acceptance of its bid.

14.     Prior to the execution of the Contract, Hosea represented to Thomas & Betts that it possessed or would acquire insurance that satisfied the requirements of the Contract.

15.     No Thomas & Betts employee has personal knowledge of the conversation between Sal Aguilera and Thomas & Betts' independent contractor, the Camionera Regional driver.

16.     Machine #14 was delivered to Thomas & Betts without damage and in good working order, and is operational today.

17.     Thomas & Betts arranged for outsourcing of Machine #2's production in the Spring of 2002, several months before Machine #2 was damaged.

18.     Thomas & Betts employee Hector Sandoval submitted the request for a replacement machine.

19.     The Agreement requires Hosea to maintain a Comprehensive General Liability policy, naming Thomas & Betts as an additional insured or certificate holder.

20.     The Agreement also requires Hosea to maintain an Automobile Liability policy, naming Thomas & Betts as a certificate holder.

21.     Thomas & Betts agreed to pay Hosea $727,191.00 pursuant to the Agreement.

## CONTESTED ISSUES OF FACT

### A.     Plaintiff/Counter-Defendant Thomas & Betts' Contested Issues of Fact[3]:

1.     The Agreement and Hosea's bid proposal establish that Thomas & Betts hired Hosea to perform a significant number of specialized services that involved much more than the mere transportation of Thomas & Betts' property from Boston to Monterrey as well as the purchase of insurance.

2.     Thomas & Betts hired Hosea based upon Hosea's representations that it was a highly skilled project mover, millwright and rigger capable of uninstalling, handling, moving and installing precision machinery and that Hosea would provide insurance coverage for Thomas & Betts' property.  In fact, Hosea charged Thomas & Betts $17,631.00 for insurance despite the fact that Hosea had never purchased any insurance coverage for Thomas & Betts' equipment and machinery located in Mexico.

3.     The Thomas & Betts die casting machines that were moved from Boston to Monterrey are complex, sensitive pieces of machinery that require careful, skilled movement and precision installation.

### Die Casting Machine No. 2

4.     Hosea arranged for another company, BDP International ("BDP") to transport Thomas & Betts' equipment, which in turn contracted with another Mexican company,

---

[3]  Thomas & Betts has included certain facts related to the non-applicability of the Carmack Amendment.  These facts are included as a result of Hosea's recent assertion in the telephone hearing with Magistrate Judge Anderson that Hosea intended to rely upon the Carmack Amendment despite the Court's ruling in its Order on Pending Motions that the Carmack Amendment does not apply in this case as a matter of law.

Tracomsa, to transport Thomas & Betts' aluminum die casting machines, including Die Casting Machine No. 2 and No. 14, within Mexico to Thomas & Betts' Monterrey, Mexico facility.

5.    Salvador Aguilera[4] was Hosea's local project manager who supervised Hosea's performance of the Agreement in Monterrey, Mexico.

6.    On September 5, 2002, Tracomsa, a Mexican company, apparently acting under a subcontract for Hosea, delivered Machine No. 2 on a flatbed trailer and parked the trailer in a parking area immediately outside Thomas & Betts' warehouse in Monterrey, Mexico, removed the safety chains securing the machine and left the trailer and machine.

7.    On the occasions when Hosea's onsite project manager, Salvador Aguilera, was not present at the facility, Tracomsa left the delivery paperwork with the security guard, who worked for an independent contractor and who was not a Thomas & Betts employee. When Mr. Aguilera returned to work at Thomas & Betts' Monterrey plant, the security guard gave Mr. Aguilera the papers from the previous day's delivery for his review and approval.

8.    According to David Hosea's testimony, the delivery of Machine No. 2 was complete before the machine was destroyed.

9.    Mr. Aguilera signed for and thereby accepted the delivery of Machine No. 2 by signing the Tracomsa invoice.

10.    In order to move the trailer for the installation of Machine No. 2, Mr. Aguilera asked if Thomas & Betts Monterrey could locate a driver and tractor that could assist him with the movement of the trailer so that Hosea's forklift subcontractor could unload the machine and place it on the factory floor.

---

[4]  Salvador Aguilera is an alias used by Felipe Garcia Ornelas. Mr. Ornelas entered the United States illegally, obtained a fraudulent social security number under the name Salvador Aguilera for purposes of illegally gaining employment in the United States, and he was successful in doing so.

11.     At Hosea's direction, Thomas & Betts contacted one of its independent contractors, Camionera Regional, to see if that company would loan and make available to Hosea's Sal Aguilera a driver and tractor to move the trailer delivered by Tracomsa and parked in Thomas & Betts' parking lot.

12.     The Camionera Regional driver and tractor arrived at Thomas & Betts' facility where the trailer was parked containing Machine No. 2, and the Camionera Regional driver spoke with Hosea's local project manager, Mr. Aguilera.  Mr. Aguilera instructed the driver to hook the tractor to the trailer containing Machine No. 2 and, according to Mr. Aguilera's testimony, told the driver not to move the trailer until he put safety chains on to secure the machine.

13.     Mr. Aguilera gave instructions to and directed the activities of the Camionera Regional driver before the driver hooked up to and moved the trailer containing Machine No. 2.

14.     Thomas & Betts did not direct the Camionera Regional driver's activities nor did Thomas & Betts' give the Camionera Regional driver any instructions with regard to moving the trailer containing Machine No. 2.

15.     According to Mr. Aguilera's testimony, Aguilera and the Camionera Regional driver and Mr. Aguilera had a disagreement concerning whether the driver should secure Machine No. 2 to the trailer with straps, and Mr. Aguilera instructed the driver to move the machine only if he put straps on it.

16.     While the Camionera Regional driver was moving the trailer, Machine No. 2 fell from the trailer to the street destroying the machine.

17.     Under the Agreement, Hosea expressly indemnified Thomas & Betts for losses and damages which included the destruction of Machine No. 2 as well as Thomas & Betts' other

claims, as follows:

> **Indemnity**. Seller shall at its own expense, defend, indemnify, and hold harmless    Purchaser (or any of Purchaser's affiliated companies, employees, officers, directors, and agents) from and against any loss, claim, cost, liability (whether statutory, civil or equitable), litigation, judgment and expense, including without limitation any damage or injury to person or property, including death, resulting from or arising out of, directly or indirectly, Seller's (or Seller's contractor's, agent's, employee's or representative's) alleged or actual negligent or willful acts or omissions in providing the Services; or (2) delivering the Equipment to Purchaser' plant; or (3) the installation of the Equipment at Purchaser' plant. Purchaser shall have the right, but not the obligation, to participate in the defense of any claim brought against Purchaser but defended by Seller.

18.    In addition, the Agreement contains an express right of set-off for Thomas & Betts' benefit:

> **Set-Off**. Purchaser shall have the right at any time to set-off any amount owing by Seller to Purchaser (or any of Purchaser's affiliated companies) against any amount due and owing to the Seller on this order.

19.    Thomas & Betts has exercised its express right of set-off under paragraph 20 of the Agreement and did not pay Hosea the balance of the contract price because of Hosea's conduct in handling Machine No. 2 which resulted in its destruction and because of Hosea's intentional and wrongful withholding of delivery by Tracomsa of Machine No. 14.

### Die Casting Machine No. 14

20.    Hosea intentionally and wrongfully withheld delivery of Machine No. 14 without any basis. Hosea admitted in its interrogatory responses that "[d]espite this, Thomas & Betts informed Hosea on 10/22/02 and on 10/23/02 of its plan to possibly withhold payment of invoice #6197 due to the alleged equipment loss. *Accordingly, Hosea delayed delivery of machine no. 14 because Thomas & Betts refused [sic] to pay breached the contract between the parties")*. (emphasis added)

22

21.     Hosea directed the Mexican company, Tracomsa, to hold Thomas & Betts' Machine No. 14 at Tracomsa's facility in Monterrey, Mexico only a few miles from Thomas & Betts' Monterrey facility and not to deliver it to Thomas & Betts, despite Hosea's contractual obligations to perform, and despite Thomas & Betts' express contractual right of setoff.

22.     Despite Hosea's bad faith and after the fact claim that it had a lien against Thomas & Betts' equipment, Hosea, pursuant to the Agreement, contractually and expressly waived any right to assert a lien against Thomas & Betts' property, including Die Casting Machine No. 14. Moreover, because of Thomas & Betts' express set-off rights, Hosea had no right to assert a lien against Thomas & Betts even if the Agreement had not contained the express waiver of lien rights.

23.     Tracomsa released Machine No. 14 to Thomas & Betts only after Thomas & Betts filed this lawsuit on December 12, 2002, seeking mandatory injunctive relief regarding Hosea to deliver Die Casting Machine No. 14 and after Thomas & Betts Monterrey had contacted Tracomsa directly warning Tracomsa that under Mexican law Tracomsa did not have the authority to hold the machine "hostage".

24.     Hosea never pleaded the Carmack Amendment as an affirmative defense in either its original Answer or in its Answer to Thomas & Betts' Amended Complaint, nor did Hosea plead the Carmack Amendment as a claim in its Counterclaim.

25.     In its Order on Pending Motions, the Court has held that the Carmack Amendment does not apply to the facts of this case.

26.     Black's Law Dictionary defines a bill of lading as follows:

**Bill of Lading.**  Document evidencing receipt of goods for shipment issued by person engaged in business of transporting or forwarding goods and it includes airbill.  U.C.C. § 1-201(6).  An instrument in writing, signed by a carrier or his agent, describing the freight so as to identify it, stating the name of the consignor,

the terms of the contract for carriage, and agreeing or directing that the freight be delivered to the order or assigns of a specified person at a specified place. It is receipt for goods, contract for their carriage, and is documentary evidence of title to goods. Schwalb v. Erie R. Co., 161 Misc. 743, 293 N.Y.S. 842, 846.

Black's Law Dictionary, Sixth Edition 1990.

27.    The pedimento or pediment for Machine No. 2 is not a bill of lading.

28.    The pedimento or pediment for Machine No. 2 is not a contract for the carriage of Machine No. 2.

29.    The pedimento or pediment for Machine No. 2 does not limit Hosea's liability.

## Insurance

30.    The Agreement, including Hosea's Bid Proposal, a part of which was expressly incorporated into the Agreement, required Hosea to provide insurance providing coverage for the loss, damage or destruction of Thomas & Betts' machinery and equipment during the time and at all places that Hosea performed services for Thomas & Betts, including within the Republic of Mexico.

31.    Despite the fact that Hosea charged Thomas & Betts $17,631.00 for insurance, Hosea never obtained any insurance providing coverage for the loss, damage on destruction of Thomas & Betts' machinery and equipment within the Republic of Mexico.

32.    On or about July, 2002, approximately two months prior to the accident involving Die Casting Machine No. 2, Hosea asked its insurance broker, McGowan & Company, Inc., ("McGowan") about potential insurance coverage for losses that could occur in Mexico under Hosea's existing insurance policies that it had purchased through McGowan.

33.    McGowan reviewed Hosea's existing policies of insurance and on July 15, 2002 (before the September 6, 2002, destruction of Die Casting Machine No. 2), told Hosea's Executive Vice President, William Holmes that there was no insurance coverage for an accident

24

that occurred in Mexico.

34.    McGowan advised Hosea to purchase insurance from an insurance company doing business in Mexico.

35.    Hosea did not purchase insurance that would provide coverage for an accident in Mexico.

36.    Hosea never disclosed to Thomas & Betts that it did not have insurance that would provide coverage for property or casualty losses in Mexico.

37.    Following the destruction of Die Casting Machine No. 2, Thomas & Betts advised Hosea that Hosea was responsible for the destruction of Die Casting Machine No. 2 and requested that Hosea notify the appropriate insurance carriers, under the policies of insurance Hosea was contractually required to provide, of the destruction of the machine.

38.    Thomas & Betts made arrangements for the outsourcing of unfinished goods, known as S-47s that could not be manufactured by Thomas & Betts due to the decreased manufacturing capacity caused by the loss of Die Casting Machine No. 2.

39.    Additionally, upon Thomas & Betts' learning that Hosea determined it would wrongfully withhold delivery of Die Casting Machine No. 14, Thomas & Betts made additional arrangements for the outsourcing of certain unfinished goods due to the decreased manufacturing capacity caused by Hosea's refusal to deliver Die Casting Machine No. 14. Further, after making requests to Hosea for the prompt delivery of Die Casting Machine No. 14, Thomas & Betts sought injunctive relief for the immediate delivery and return of the Die Casting Machine No. 14 and brought this action for damages for the value of Die Casting Machine No. 2 which was destroyed.

40.     As a result of Hosea's breach, Thomas & Betts incurred damages which include: (1) the loss of Die Casting Machine No. 2, with a fair market replacement value of $150,000 - $200,000.

41.     Additionally, due to decreased manufacturing capacity resulting from the loss of Die Casting Machine No. 2, Thomas & Betts has been outsourcing the manufacturing of certain unfinished goods to another manufacturer.

42.     The cost of the outsourcing of these unfinished goods substantially exceeds Thomas & Betts' cost to manufacture these unfinished goods. The difference between the cost paid by Thomas & Betts for the outsourcing of the manufacturing and Thomas & Betts' standard cost of production of the goods is a part of the damages to Thomas & Betts resulting from the destruction of Die Casting Machine No. 2. These damages from the destruction of Die Casting Machine No. 2 are to date $673,227.00.

43.     Similarly, Hosea's wrongful refusal to deliver Machine No. 14 caused Thomas & Betts to outsource the manufacturing of certain unfinished goods for the period of time that Hosea withheld delivery.

44.     The cost of outsourcing these unfinished goods substantially exceeded Thomas & Betts' cost to manufacture the unfinished goods. The difference between the cost paid for the outsourcing of the manufacturing and Thomas & Betts' standard cost of production of the goods is a part of the damages to Thomas & Betts resulting from Hosea's refusal to deliver Die Casting Machine No. 14. These damages are $81,366.53.

45.     Additionally, due to Hosea's breach of its contract, its failure and refusal to perform and its subsequent bad faith in refusing to deliver Die Casting Machine No. 14, Thomas & Betts hired another company (CCI-MEX SA DE CV) to complete the installation and set-up of

Die Cast Machine No. 14. The additional cost for services rendered by CCI-MEX was $10,288.23.

46.     Thomas & Betts further seeks punitive damages in this matter due to Hosea's egregious and intentional actions relating to Hosea's wrongful withholding of Die Casting Machine No. 14 which was delivered only after Thomas & Betts filed this action seeking injunctive relief and damages.

47.     Ernie Liggett has no personal knowledge of what occurred at Thomas & Betts' Monterrey facility on September 5 and 6, 2002.

48.     Hosea was informed by its insurance broker, McGowan, and knew prior to the September 6, 2002 destruction of Thomas & Betts' Die Casting Machine No. 2 that Hosea's existing insurance specifically excluded from coverage any event or occurrence that took place in Mexico.

49.     Hosea, contrary to the advice of its insurance broker, McGowan, failed to obtain insurance that would cover events, occurrences or losses that took place in Mexico.

50.     Thomas & Betts is not the insured under Hosea's comprehensive general liability or automobile liability policies.

### Other

51.     With regard to another contract unrelated to the services that Hosea provided relating to the Boston, Massachusetts to Monterrey, Mexico move, Thomas & Betts off-set $22,389.59 from the contract price as a result of Hosea's failure to perform certain required services relating to the installation of machinery and damage to machinery.

**B.     Defendant/Counter-Claimant Hosea's Contested Issues of Fact:**

1.     Thomas & Betts drafted the Agreement.

2.      Thomas & Betts is a sophisticated company with in-house legal counsel who drafted the Agreement.

3.      The driver who moved Machine #2 worked for Camionera Regional, a company hired by Thomas & Betts.

4.      Thomas & Betts called and spoke with a representative of Camionera Regional, and requested that they send a driver and truck to the Thomas & Betts Monterrey facility on September 6, 2002.

5.      The insurance to be obtained under the Agreement does not insure the insured's own property.

6.      Thomas & Betts had hired Camionera Regional to perform services in the past.

7.      Thomas & Betts paid Camionera Regional for the truck and driver services it performed, including the services performed on September 6, 2002.

8.      Hosea never had a contract with Camionera Regional, and has never used their drivers in the past.

9.      Thomas & Betts normally provided its own employee driver to move machinery in the Monterrey yard and facility.

10.     On September 6, 2002 Thomas & Betts chose to hire Camionera Regional to move machinery.

11.     Sal Aguilera was not present when the Camionera Regional driver, hired by Thomas & Betts, moved the trailer and damaged Machine #2.

12.     By moving the trailer and Machine #2 without utilizing safety straps, the Camionera Regional driver acted in direct contravention of Sal Aguilera's request.

13.     Terry Trainer, an employee of Thomas & Betts, obtained requisite information to purchase a replacement for Machine #2 as early as March 29, 2002, several months before it was damaged.

14.     The information obtained by Mr. Trainor explained that a replacement machine for Machine #2 could be delivered in as little as 23 weeks.

15.     As of the date of the filing of this Pretrial Order, Thomas & Betts has chosen not to replace Machine #2, but rather has been outsourcing its production ever since the summer of 2002, for a total of 155 weeks.

16.     On September 24, 2002 Tom Shanley requested and received a quotation on a replacement machine for Machine #2.  This quote stated that a replacement machine could be delivered in 22-24 weeks.

17.     Hector Sandoval, Plant Manager for Thomas & Betts' Monterrey, Mexico facility, submitted a request for a replacement machine to Thomas & Betts' corporate offices in late 2002 or early 2003.

18.     Mr. Sandoval never received a response to his request, and Machine #2 has never been replaced.

19.     Hosea obtained and provided 13 insurance coverage policies for the Thomas & Betts project.

20.     The Agreement does not require Hosea to obtain insurance that would have covered the risk at issue in this case – damages to Thomas & Betts' own machinery.

21.     The Agreement does not state that Hosea must obtain insurance coverage for acts that occur in Mexico by an independent contractor hired by Thomas & Betts.

22.     Hosea obtained a Comprehensive General Liability policy insured by Burlington Ins. Co., and naming Thomas & Betts as an additional insured or certificate holder.

23.     Hosea obtained an Automobile Liability policy insured by Lincoln General Ins. Co., and naming Thomas & Betts as a certificate holder.

24.     Thomas & Betts declared on a customs form submitted to a governmental entity that the value of Machine #2 was $30,000.

25.     Thomas & Betts represented on another internal memorandum that the value of Machine #2 was $30,000.

26.     On an internal invoice, Thomas & Betts again valued Machine #2 at $30,000.

27.     These three documents were the only valuations of Machine #2 made before it was damaged on September 6, 2002.

28.     Nothing in the Agreement put Hosea on notice that if Machine No. 2 was damaged Thomas & Betts would suffer injury greater than the value of the machine.

29.     Nothing in the Agreement put Hosea on notice that it was within the reasonable contemplation of the parties that damages that would flow from damage to a machine would exceed the value of the machine itself.

30.     Thomas & Betts has only paid Hosea $600,000.00 on the contract, and still owes $127,191.00 plus interest.

31.     On an unrelated contract, Thomas & Betts still owes Hosea $22,389.59 plus interest.

## CONTESTED ISSUES OF LAW

**A.      By Plaintiff/Counter-Defendant Thomas & Betts:**

1.      Did Hosea breach the Agreement with regard to the movement and handling of Die Casting Machine No. 2 resulting in its destruction?

2.      Did Hosea breach the Agreement by not obtaining insurance that would cover the loss of and damage to Thomas & Betts' property in Mexico?

3.      Did Hosea breach the Agreement by refusing to deliver and install Die Casting Machine No. 14?

4.      Did Hosea have control over Die Casting Machine No. 2 at the time it was destroyed?

5.      Did Hosea's project manager, Salvador Aguilera, control and direct the Camionera Regional driver while the driver was moving the trailer containing Die Casting Machine No. 2?

6.      Was the Camionera Regional driver the borrowed servant of Hosea while said driver was moving the trailer containing Die Casting Machine No. 2?

7.      Did Thomas & Betts waive Hosea's performance requirements under the Contract with regard to Die Casting Machine No. 2?

8.      Did Thomas & Betts have the right to set-off its damages resulting from the destruction of Machine No. 2 against any balance that would have been due under the Agreement?

9.      Did Hosea have the right to assert a lien against Thomas & Betts' Die Casting Machine No. 14?

10.     In the Agreement, did Hosea expressly waive it right to assert a lien against Thomas & Betts' property?

11.     Whether Hosea is required to indemnify Thomas & Betts for its losses and damages as expressly set forth in the Agreement?

12.     Did Hosea breach of its duty of good faith and fair dealing to Thomas & Betts with regard to the performance of the Agreement?

13.     Did Hosea breach its duty of good faith and fair dealing by holding Die Casting Machine No. 14 hostage and intentionally refusing to deliver the machine to Thomas & Betts?

14.     Did Hosea breach its duty of good faith and fair dealing by claiming that it had a lien against Thomas & Betts' Machine No. 14?

15.     Did Hosea's intentional refusal to deliver and install Die Casting Machine No. 14 constitute the intentional tort of conversion?

16.     Did Hosea have a duty to inform Thomas & Betts that it did not have insurance that would cover the loss of Thomas & Betts' property in Mexico prior to the accident that resulted in the destruction of Die Casting Machine No. 2?

17.     Did Hosea fraudulently induce Thomas & Betts to enter into the Agreement by making false representations concerning insurance for Thomas & Betts property in its bid proposal to Thomas & Betts?

18.     Was Hosea's failure to inform Thomas & Betts that it did not have insurance that would cover damage to Thomas & Betts' property in Mexico constitute an intentional misrepresentation/concealment?

19.    Did Hosea's representations to Thomas & Betts that Hosea had insurance appropriate for the move project, including the portion in Mexico constitute an unfair and deceptive act under the Tennessee Consumer Protection Act?

20.    Did Hosea's concealment from Thomas & Betts that Hosea did not have insurance for the move project after Thomas & Betts accepted Hosea's project proposal constitute an unfair and deceptive act under the Tennessee Consumer Protection Act?

21.    Is Hosea liable for the destruction and loss of Thomas & Betts' Machine No. 2, and, if so, in what amount?

22.    Is Hosea liable for the damages associated with the increased costs associated with hiring another manufacturing company to manufacture the components that Die Casting Machine No. 2 would have made, and, if so, in what amount?

23.    Is Hosea liable for the damages Thomas & Betts incurred as a result of Hosea's conduct relating to Die Casting Machine No. 14, including the increased costs associated with hiring another manufacturing company to manufacture the components that Die Casting Machine No. 14 would have made, and the cost associated with hiring another contractor to complete the move, to install and to set-up Die Casting Machine No. 14, and if so, in what amount?

24.    Is Hosea liable for punitive damages as a result of its conduct relating the conversion of Die Casting Machine No. 14 and its conduct, representations, concealment and omissions relating to insurance?

25.    May Thomas & Betts, alternatively, rescind the Agreement on the basis of Hosea's fraudulent conduct?

26.    Does the Carmack Amendment have any applicability to this case?

33

27.     Does Ernie Liggett meet the requirements of the Federal Rules of Evidence and case law necessary to make him competent to testify as an expert in this case?

28.     Does William Holmes meet the requirements of the Federal Rules of Evidence and case law necessary to make him competent to testify as an expert in this case?

29.     Is the Affidavit of Joel Brown admissible into evidence?

30.     Are the documents from BDP International, Inc. admissible into evidence?

31.     Is the outsourcing summary prepared by Hosea's counsel admissible into evidence?

**B.      By Defendant/Counter-Claimant Hosea:**

1.      Whether the acts of Thomas & Betts' contractor in damaging Machine #2 constitute an intervening cause that absolves Hosea of liability.

2.      Whether Thomas & Betts first breached the Agreement.

3.      Whether Thomas & Betts prevented Hosea from performing under the Agreement.

4.      Whether the acts of Thomas & Betts' contractor absolved Hosea of performance under the Agreement under the doctrine of impossibility.

5.      Whether the acts of Thomas & Betts' contractor absolved Hosea of performance under the Agreement under the doctrine of impracticability.

6.      Whether the Agreement should be construed against its drafter, Thomas & Betts.

7.      Whether Thomas & Betts failed to mitigate its damages, if any, by failing to replace Machine #2 and continuing to outsource its production.

8.      Whether the Comprehensive General Liability (CGL) and Automobile Liability insurance policies would cover a loss to cargo, such as Machine #2.

34

9.     Whether the Agreement requires Hosea to obtain insurance coverage for losses occurring in Mexico.

10.     Whether Thomas & Betts should be bound by its numerous representations that the value of Machine #2 is $30,000.

11.     Whether the Agreement put Hosea on notice that if Machine No. 2 was damaged Thomas & Betts would suffer injury greater than the value of the machine.

12.     Whether the Agreement put Hosea on notice that it was within the reasonable contemplation of the parties that damages that would flow from damage to a machine would exceed the value of the machine itself.

## EXHIBITS

Before trial, the parties will to exchange the potential exhibits each intends to use during the trial in this case.  Potential exhibits stipulated as admissible by the parties are so noted below. All objections to potential exhibits also are noted below.  This paragraph does not apply to deposition transcripts, demonstrative aids, or exhibits offered for impeachment or rebuttal purposes.  The parties reserve the right to designate additional trial exhibits after the Court's rulings on the parties' motions *in limine*.

Defendant Hosea reserves the right to make further objections to certain exhibits at trial depending upon the purpose for their admission, and whether such purpose will violate Fed.R.Evid. 802.

In addition to all pleadings filed in this action, interrogatory answers, responses to requests for admissions and responses to requests for production of documents, the following documents as designated as potential trial exhibits:

## POTENTIAL TRIAL EXHIBITS

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|---|---|---|
| 1 | Rigging, Millwright, Electrical & Mechanical Purchase Agreement dated February 6, 2002, between Thomas & Betts Corporation and Hosea Project Movers, LLC (Pratt Exhibit 1) (Hosea 001 – 006, T&B 7 – 26) (unbatesed version of contract only marked as Orr Exhibit 1) | Admissible |
| 2 | Michael Pratt Calendar Excerpt from September 6, 2002 (Pratt Exhibit 2; Orr Exhibit 9) (T&B 365) | Admissible |
| 3 | October 31, 2002, letter from Ernie Liggett to Michael J. Geiger (Pratt Exhibit 3; Hosea Exhibit 11) (Hosea 076 – 077) | Admissible |
| 4 | September 24, 2002, letter from Steve Spierenburg/IdraPrince to Tom Shanley (Pratt Exhibit 4) (T&B 108) | Admissible |
| 5 | November 13, 2002, letter from Michael J. Geiger to Ernie Liggett (Pratt Exhibit 5; Orr Exhibit 6) (T&B 46 – 51) | Admissible |
| 6 | Thomas & Betts Accident Report (Pratt Exhibit 7; Mexico Exhibit 13) (T&B 218 – 224) | T&B 218 – 223 Admissible |
| 7 | Thomas & Betts Accident Report (Pratt Exhibit 8; Mexico Exhibit 12) (T&B 211 – 217) | Admissible |
| 8 | October 10, 2002, email from Matt Orr to Stephen Negrini and Michael Pratt (Pratt Exhibit 9; Orr Exhibit 4) (T&B 243) | Admissible |
| 9 | December 21, 2002, email from Hector Terrones to Hector Sandoval, Michael Pratt, Terry Trainor and Tom Shanley (Pratt Exhibit 10) (T&B 325 – 327) | Admissible |
| 10 | October 24, 2002, letter from Christopher J. Clark/French USA to George Kuharsky (Kuharsky Exhibit 1) (T&B 81 – 83) | Hosea Objection – could not be properly identified by Kuharsky. |
| 11 | October 25, 2002, letter from Christopher J. Clark/French USA to George Kuharsky (Kuharsky Exhibit 2) (T&B 84 – 86) | Hosea Objection – could not be properly identified by Kuharsky. |
| 12 | October 24, 2002, email from David Kaufman to George Kuharsky (Kuharsky Exhibit 3) (T&B 87 – 95) | Hosea Objection – could not be properly identified by Kuharsky. |
| 13 | Industrial Resources, Inc. Quote (Kuharsky Exhibit 4) (T&B 96 – 98) | Admissible |
| 14 | Information regarding Die Casting Machines printed from Internet by George Kuharsky on October 23, 2002 (Kuharsky Exhibit 5) (T&B 99 – 104) | Admissible |

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|---|---|---|
| | **POTENTIAL TRIAL EXHIBITS** | |
| 15 | December 7, 2001 Hosea company profile and information packet from Ernie Liggett to Matt Orr (Hosea Exhibit 1) (T&B 1239 – 1320) | Admissible |
| 16 | January 17, 2002, Hosea Project Proposal from Ernie Liggett to Tom Shanley (Hosea Exhibit 2) (T&B 1005 – 1124) | Admissible |
| 17 | Undated Hosea Project Proposal for Thomas & Betts (Hosea Exhibit 3) (T&B 1125 – 1237) | Admissible |
| 18 | February 6, 2002, Transfer Timeline – Boston Machine Cell Transfer Timeline (Hosea Exhibit 5) (Hosea 011) | Admissible |
| 19 | February 7, 2002, Hosea Invoice No. 006197 in the amount of $127,191.00 to Thomas & Betts and February 7, 2002, Hosea Invoice Nos. 005992 through 005994 in the total amount of $727,191.00 to Thomas & Betts (Hosea Exhibit 6) (Hosea 007 – 010) | Admissible |
| 20 | February 7, 2002, handwritten letter from Ernie Liggett to Matt Orr with Hosea invoices attached (Hosea Exhibit 7) (T&B 940 – 954) | T&B 947, 949, 948, 950, 951, 953, 952 and 954 Admissible |
| 21 | February 7, 2002, Thomas & Betts Purchase Order in the amount of $727,191.00 (Hosea Exhibit 8) (Hosea 014) | Admissible |
| 22 | Business Card of Salvador Aguilera of Hosea (Hosea Exhibit 9) (no bates) | Hosea Objection – relevance. |
| 23 | October 23, 2002, letter from Michael J. Geiger to David Hosea (Hosea Exhibit 10) (Hosea 078 – 079) | Admissible |
| 24 | November 7, 2002, email from Ernie Liggett to William Holmes (Hosea Exhibit 12) (Hosea 075) | Hosea Objection – hearsay. |
| 25 | November 14, 2002, letter from Michael J. Geiger to David Hosea (Hosea Exhibit 13) (Hosea 066 – 067) | Admissible |
| 26 | August 27, 2004, Subpoena Duces Tecum issued to McGowan & Co., Inc. Custodian of Records (Santillo 2) (McG 0003 – 0004 & 0001 – 0002) | Admissible |
| 27 | January 29, 2002, facsimile from Bill Holmes to Jan Santillo (Holmes Exhibit 14; Santillo Exhibit 3) (McG 0019) | Admissible |
| 28 | January 29, 2002, facsimile from Janice Santillo to Marcie/Interstate with confirmation sheet (Holmes Exhibit 15; Santillo Exhibit 4) (McG 0018 & McG 0015) | Admissible |

| **POTENTIAL TRIAL EXHIBITS** |
|---|---|---|
| **No.** | **Exhibit Description with Bates Numbers, if possible** | **Stipulation of Admissibility or Basis for Objection** |
| 29 | Certificate of Liability Insurance for Hosea Worldwide, Inc. which was faxed to Thomas & Betts on January 29, 2002 – Insurers:  Burlington Insurance Co. and Lincoln General Ins. Company (Holmes Exhibit 16; Santillo Exhibit 5) (McG 0016) | Admissible |
| 30 | Certificate of Liability Insurance for Hosea Worldwide, Inc. which was faxed to Bill Homes on January 29, 2002 – Insurers:  Burlington Insurance Co. and Lincoln General Ins. Company (Holmes Exhibit 17; Santillo Exhibit 6) (McG 0017) | Admissible |
| 31 | Certificate of Liability Insurance for Hosea Worldwide, Inc. – Insurer:  Clarendon National Ins. Co. (Holmes Exhibit 18; Santillo Exhibit 9 & 10) (McG 0025) | Admissible |
| 32 | Certificate of Liability Insurance for Hosea Worldwide, Inc. – Insurer:  Lincoln General Ins. Co. (Holmes Exhibit 19; Santillo Exhibit 8) (McG 0020) | Admissible |
| 33 | June 19, 2002, facsimile from Janice Santillo to Bill Holmes (Holmes Exhibit 20; Santillo Exhibit 16) (McG 0014) | Admissible |
| 34 | June 19, 2002, facsimile from Janice Santillo to Bill Holmes with handwritten date of June 26, 2002 and "Bill?" (Holmes Exhibit 21; Santillo Exhibit 19) (McG 0040) | Admissible |
| 35 | Certificate of Liability Insurance for Hosea Worldwide, Inc. – Insurer:  Clarendon National Ins. Co. which Bill Holmes faxed to Jan Santillo on June 21, 2002 (Holmes Exhibit 22; Santillo Exhibit 17) (McG 0026) | Admissible |
| 36 | July 12, 2002, McGowan handwritten note regarding conversation with William Holmes (Holmes Exhibit 23; Santillo Exhibit 20) (McG 0039) | Admissible |
| 37 | July 12, 2002, McGowan computer screen printout (Holmes Exhibit 24; Santillo Exhibit 21) (McG 0038) | Admissible |
| 38 | July 12, 2002, facsimile from Janice Santillo to Larry D/Interstate (Holmes Exhibit 25; Santillo Exhibit 22) (McG 0035 & McG 0034) | Admissible |
| 39 | July 15, 2002, facsimile from Marcie to Janice Santillo (Holmes Exhibit 26; Santillo Exhibit 23) (McG 0027) | Admissible |
| 40 | July 12, 2002, facsimile from Janice Santillo to Jim Black/Deep South (Holmes Exhibit 27; Santillo Exhibit 24) (McG 0033 & McG 0032) | Admissible |
| 41 | July 18, 2002, facsimile from Jim Black to Janice Santillo (Holmes Exhibit 28; Santillo Exhibit 25) (McG 0028) | Admissible |

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|---|---|---|
| 42 | July 12, 2002, facsimile from Janice Santillo to Gary Karges (Holmes Exhibit 29; Santillo Exhibit 26) (McG 0037 & McG 0036) | Admissible |
| 43 | July 12, 2002, facsimile from Gary Karges to Janice Santillo (Holmes Exhibit 30; Santillo Exhibit 27) (McG 0031) | Admissible |
| 44 | July 12, 2002, facsimile from Janice Santillo to Bill Holmes (Holmes Exhibit 31; Santillo Exhibit 28) (McG 0030 & McG 0029) | McG 0029 Admissible |
| 45 | September 4, 2002, Tracomsa Invoice (Holmes Exhibit 32) (Hosea 055) | Admissible |
| 46 | August 5, 2002 – September 23, 2002, BDP International Import-Export Invoices to Hosea Project Movers (Holmes Exhibit 33) (Hosea 017 – 054) | Admissible |
| 47 | October 22, 2002, email from Matt Orr to Bill Holmes (Holmes Exhibit 34) (Hosea 080) | Admissible |
| 48 | November 7, 2002, email from Ernie Liggett to Michael Geiger (Holmes Exhibit 35) (Hosea 074) | Admissible |
| 49 | November 12, 2002, email from Ernie Liggett to William Holmes (Holmes Exhibit 36) (Hosea 073) | Admissible |
| 50 | November 13, 2002, letter from Michael J. Geiger to Ernie Liggett (Holmes Exhibit 37) (Hosea 068 - 071) | Hosea Objection – hearsay. |
| 51 | November 21, 2002, email from Ernie Liggett to William Holmes (Holmes Exhibit 39) (Hosea 062) | Admissible |
| 52 | November 21, 2002, email from Ernie Liggett to Michael Geiger (Holmes Exhibit 40) (T&B 36 – 37) | Admissible |
| 53 | November 21, 2002, email from Ernie Liggett to Michael Geiger (Holmes Exhibit 41) (Hosea 057 - 058) | Admissible |
| 54 | November 25, 2002, email from Ernie Liggett to Michael Geiger (Holmes Exhibit 42) (T&B 38) | Admissible |
| 55 | November 25, 2002, email from Michael Geiger to Ernie Liggett (T&B 39); November 20, 2002, email from Ernie Liggett to Michael Geiger (T&B 40) (Holmes Exhibit 43) | Hosea Objection – hearsay. |
| 56 | March 6, 2003, McGowan computer screen printout (Holmes Exhibit 44; Santillo Exhibit 29) (McG 0023) | Admissible |
| 57 | March 25, 2003, facsimile from Bill Holmes to Jan Santillo (Holmes Exhibit 45; Santillo Exhibit 30) (McG 0021) | Admissible |
| 58 | March 25, 2003, McGowan computer screen printout (Holmes Exhibit 46; Santillo Exhibit 31) (McG 0022) | Admissible |

| POTENTIAL TRIAL EXHIBITS |
|---|

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|---|---|---|
| 59 | August 5, 2004, facsimile from Janice Santillo to Bill Holmes (Holmes Exhibit 47; Santillo Exhibit 33) (McG 0169 – 0175) | McG 0169 Admissible |
| 60 | September 9, 2004, McGowan computer screen printout (Holmes Exhibit 48; Santillo Exhibit 34) (McG 0005) | Admissible |
| 61 | September 9, 2004, McGowan computer screen printout (Holmes Exhibit 49; Santillo Exhibit 35) (McG 0008) | Admissible |
| 62 | Hosea's April 19, 2004, Response to Thomas & Betts' First Set of Interrogatories (Holmes Exhibit 50) (no bates) | Admissible |
| 63 | Hosea's June 30, 2004, Response to Thomas & Betts' First Set of Requests for Admissions and Second Set of Interrogatories and Requests for Production of Documents (Holmes Exhibit 51) (no bates) | Admissible |
| 64 | September 6, 2002, handwritten notes by Ernie Liggett (Liggett Exhibit 52) (Trainor Exhibit 1) (Hosea 081 - 082) | Admissible |
| 65 | October 10, 2002, email from Michael Pratt to Stephen Negrini and Matt Orr (Liggett Exhibit 53) (T&B 242) | Admissible |
| 66 | November 20, 2002, email from Ernie Liggett to Michael Geiger (Liggett Exhibit 55) (Hosea 061) | Admissible |
| 67 | Hector Sandoval's File (Trainor Exhibit 3; Mexico Exhibit 18) (T&B 318 – 338) | Admissible |
| 68 | October 31, 2002, letter from Ernie Liggett to Michael J. Geiger (Trainor Exhibit 4; Orr Exhibit 5) (T&B 52 – 53) | Admissible |
| 69 | Thomas & Betts' June 10, 2004, Response to Hosea's First Set of Interrogatories (Trainor Exhibit 5; Mexico Exhibit 17) (no bates) | Admissible |
| 70 | March 6, 2002, IdraPrince Quotation to Terry Trainor (Trainor Exhibit 6) (T&B 110 – 125) | Admissible |
| 71 | March 29, 2002, IdraPrince Quotation to Terry Trainor (Trainor Exhibit 7) (T&B 127 – 143) | Admissible |
| 72 | September 24, 2002, IdraPrince Quotation to Tom Shanley (Trainor Exhibit 8) (T&B 145 – 159) | Hosea Objection – hearsay. |
| 73 | Certificate of Liability Insurance for Hosea Worldwide, Inc. - Insurers:  Burlington Insurance Co. and Lincoln General Ins. Company (Orr Exhibit 2) (no bates) | Admissible |
| 74 | November 20, 2002, email from Ernie Liggett to Michael Geiger (Orr Exhibit 7) (T&B 40) | Admissible |
| 75 | Transfer Timeline – Exhibit B – Boston Machine Cell Transfer Timeline (Orr Exhibit 8) (T&B 26) | Admissible |

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|---|---|---|
| | POTENTIAL TRIAL EXHIBITS | |
| 76 | Hosea Invoice Nos. 005992 through 005994 in the total amount of $727,191.00 to Thomas & Betts (Orr Exhibit 10) (T&B 941 – 946) | Admissible |
| 77 | January 4, 2002, Certificate of Liability Insurance for Hosea Worldwide, Inc. - Insurers:  Burlington Insurance Co. and Lincoln General Ins. Company (Santillo Exhibit 7) (T&B 955 – 956) | Admissible |
| 78 | Burlington Insurance Company Policy for Hosea Worldwide, Inc. for the policy period December 15, 2001 to December 15, 2002 (Santillo Exhibit 11) (McG 0137 – 0167) | Admissible |
| 79 | Lincoln General Insurance Policy for John Clark Trucking & Rigging Company for the policy period November 13, 2001 to November 13, 2002 (Santillo Exhibit 12) (McG 0176 – 0272) | Admissible |
| 80 | Lexington Insurance Company Policy for Hosea Worldwide, Inc. for the policy period January 26, 2001 to January 26, 2002 (Santillo Exhibit 13) (McG 0066 – 0103) | Admissible |
| 81 | Clarendon National Insurance Company Policy for Hosea Worldwide, Inc. for the policy period January 26, 2002 to January 26, 2003 (Santillo Exhibit 14) (McG 0104 – 0136) | Admissible |
| 82 | Lincoln General Insurance Policy for John Clark Trucking & Rigging Company for the policy period November 13, 2002 to November 13, 2003 (Santillo Exhibit 15) (McG 0273 – 0388) | Admissible |
| 83 | Certificate of Liability Insurance for Hosea Worldwide, Inc. – Insurer:  Clarendon National Ins. Co. which was faxed to 918-593-4413 on June 21, 2002 (Santillo Exhibit 18) (McG 0024) | Admissible |
| 84 | August 5, 2004, Handwritten Notes from McGowan's File (Santillo Exhibit 32) (McG 0168) | Admissible |
| 85 | Diagram drawn by Salvador Aguilera during his deposition on April 19, 2005 (Mexico Exhibit 1) (no bates) | Admissible |
| 86 | September 4, 2002, Tracomsa invoice (Mexico Exhibit 2) (T&B 80) | Admissible |
| 87 | Business Card of Salvador Aguilera (Mexico Exhibit 5) (no bates) | Hosea Objection (see No. 20) |
| 88 | Photographs (Mexico Exhibit 6) (Hosea 0083 – 0087) | Admissible |
| 89 | Photographs of the Unloading of Machine No. 14 (Mexico Exhibit 7) (T&B 177 – 182) | Hosea Objection – hearsay, unauthenticated. |

41

## POTENTIAL TRIAL EXHIBITS

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|---|---|---|
| 90 | Affidavit of Nemorio Loera Alvarado (Mexico Exhibit 8) (no bates) | Hosea Objection – hearsay, not based on personal knowledge, contradicted by deposition testimony. |
| 91 | Diagram drawn by Nemorio Loera Alvarado during his deposition on April 19, 2005 (Mexico Exhibit 9) (no bates) | Admissible |
| 92 | Diagram drawn by Hector Terrones during his deposition on April 19, 2005 (Mexico Exhibit 10) (no bates) | Admissible |
| 93 | Diagram on Monterrey facility and photographs complied by Hector Terrones (Mexico Exhibit 11) (T&B 328 - 333) | Admissible |
| 94 | Photographs (Mexico Exhibit 14) (T&B 226 - 241) | Admissible |
| 95 | Photographs (Mexico Exhibit 15) (T&B 185 - 210) | Hosea Objection – does not accurately portray equipment at time of incident. |
| 96 | September 25, 2003, Affidavit of Hector Terrones (Mexico Exhibit 16) (T&B 366 - 369) | Hosea Objection - hearsay, not based on personal knowledge, contradicted by deposition testimony. |
| 97 | Thomas & Betts Purchase Order to CCI MEX SA DE CV (Mexico Exhibit 19) (T&B 907) | Admissible |
| 98 | CCI MEX SA DE CV Invoice to Thomas & Betts (Mexico Exhibit 20) (T&B 910) | Admissible |
| 99 | Thomas & Betts internal requisition form for the work CCI MEX SA DE CV performed (Mexico Exhibit 21) (T&B 900) | Admissible |
| 100 | Thomas & Betts Damage Calculation and supporting Pace invoices for damages attributable to outsourcing costs associated with Machine No. 2 (Mexico Exhibit 22) (T&B 370 - 851) | Admissible |
| 101 | Thomas & Betts Damage Calculation and supporting Greenfield invoices for damages attributable to outsourcing costs associated with Machine No. 14 (Mexico Exhibit 23) (T&B 852 - 895) | Admissible |
| 102 | Thomas & Betts back-up documents relating to standard cost (Mexico Exhibit 25) (T&B 1616 – 1660) | Hosea Objection to 1st page (T&B 1616) |
| 103 | March 26, 2002, Memorandum from Stephen Negrini to Harvey Berman, John Fouts, Mike Kobb, Michael Pratt, Ruben Villegas and Robin Lindgren re: Outsourcing Plan for Aluminum Castings (Mexico Exhibit 29) (T&B 911 - 917) | Admissible |

42

## POTENTIAL TRIAL EXHIBITS

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|-----|------------------------------------------------------|------------------------------------------------------|
| 104 | Resume of Graciela Hager (no bates) | Hosea Objection – not provided in discovery. |
| 105 | Dave Troutman Expert Report (no bates) | Hosea Objection – not proper expert foundation. |
| 106 | Customer List provided by Dave Troutman (no bates) | Hosea Objection – not proper expert foundation. |
| 107 | Information printed from Integration Technologies Ltd website on August 12, 2005 (no bates) | Hosea Objection – hearsay, authenticity. |
| 108 | Hosea Pamphlet (T&B 1323 – 1331) | Admissible |
| 109 | Hosea Pamphlet (T&B 1332 – 1334) | Admissible |
| 110 | Certificate of Liability Insurance for Hosea Worldwide, Inc. which was faxed to Thomas & Betts by McGowan on January 29, 2002 – Insurers: Burlington Insurance Co. and Lincoln General Ins. Company (T&B 906) | Admissible |
| 111 | January 31, 2002, email from Ernie Liggett to Matt Orr (T&B 970) | Admissible |
| 112 | November 12, 2002, email from Matt Orr to Ernie Liggett (Hosea 072) | Admissible |
| 113 | November 21, 2002, email from Ernie Liggett to William G. Holmes (Hosea 059) | Admissible |
| 114 | August 31, 2004, McGowan computer screen printout (McG 0011) | Hosea Objection – hearsay, not authenticated. |
| 115 | August 31, 2004, McGowan computer screen printout (McG 0009) | Hosea Objection – hearsay, not authenticated. |
| 116 | September 9, 2004, McGowan computer screen printout (McG 0006) | Hosea Objection – hearsay, not authenticated. |
| 117 | September 9, 2004, McGowan computer screen printout (McG 0007) | Hosea Objection – hearsay, not authenticated. |
| 118 | Photographs (T&B 339 – 363) | Hosea Objection – hearsay. |
| 119 | December 28, 2001, letter from Ernie Liggett to Jim Levins of Thomas & Betts (T&B 981 – 984) | Admissible |
| 120 | January 7, 2002, Thomas & Betts Plant Consolidation Project Milestones (T&B 987 – 988) | Hosea Objection – relevance. |
| 121 | January 10, 2002, Ernie Liggett facsimile to Matt Orr (T&B 993 – 1001) | Admissible |
| 122 | January 21, 2002, Summary of Hosea Proposals prepared by Thomas & Betts (T&B 958 – 962) | Admissible |
| 123 | January 29, 2002, Ernie Liggett facsimile to Matt Orr (T&B 973 – 980) | Admissible |
| 124 | Certificate of Liability Insurance for Hosea Worldwide, Inc. which was faxed to Thomas & Betts by McGowan on January 29, 2002 – Insurers:  Burlington Insurance Co. and Lincoln General Ins. Company (T&B 939) | Admissible |

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|-----|-----|-----|
| 125 | January 29, 2002, email from Ernie Liggett to Matt Orr (T&B 968) | Admissible |
| 126 | January 31, 2002, email from Ernie Liggett to Matt Orr (T&B 971) | Admissible |
| 127 | January 31, 2002, email from Ernie Liggett to Matt Orr (T&B 970) | Admissible |
| 128 | February 7, 2002, Thomas & Betts Plant Consolidation Project Milestones (T&B 985) | Hosea Objection – relevance. |
| 129 | April 25, 2002, email from Herb Bradshaw to Matt Orr (T&B 991) | Hosea Objection – hearsay. |
| 130 | April 25, 2002, email from Chris Rouser to David Caldwell and Matt Orr (T&B 990) | Hosea Objection – hearsay. |
| 131 | November 14, 2002, letter from Michael J. Geiger to David Hosea (shows bcc to Michael Pratt) (T&B 41 – 45) | Admissible |
| 132 | December 18, 2002, Project Proposal (Hosea 013) | Admissible |
| 133 | April 10, 2003, Thomas & Betts Calculation of Back Charges to Hosea (T&B 67 – 68) | Hosea Objection – hearsay. |
| 134 | Email from Kay Beiser to Ernie Liggett, dated 11/14/2002 (Hosea 63 – 065) | Thomas & Betts Objection – Hearsay as to Kay Beiser's email |
| 135 | Spanish Language Pediment No. 3091-2501239, dated 03/04/2003 (T&B 71) | Thomas & Betts Objection – Relevance and Under Rule 403 |
| 136 | Export Agent's Commercial Invoice No. PM-M-0095, dated 03/09/2002, Buyer: Thomas & Betts / Seller: Thomas & Betts (T&B 72) | Thomas & Betts Objection – Relevance and Under Rule 403 |
| 137 | Shipping Memorandum to Thomas & Betts, dated 08/28/2002, Re: Trailer No. 836 (T&B 73) | Thomas & Betts Objection – Relevance and Under Rule 403 |
| 138 | Spanish Language Pediment No. TB2-0764 (T&B 79) | Thomas & Betts Objection – Relevance and Under Rule 403 |
| 139 | Email from Ernie Liggett to William G. Holmes, dated 11/15/2002 (Hosea 63 – 65) | Thomas & Betts Objection – Hearsay as to Kay Beiser's email |
| 140 | Email from Michael J. Geiger to Ernie Liggett, dated 11/25/2002 (Hosea 56) | Admissible |
| 141 | Release Authorization, dated 07/11/2002, referencing trailer D-28 (T&B 78) | Thomas & Betts Objection – Relevance |
| 142 | Letter from Ernie Liggett to Matt Orr and accompanying information regarding Hosea and services it provides, dated 12/07/2001 (T&B 1240) | Admissible |

| No. | Exhibit Description with Bates Numbers, if possible | Stipulation of Admissibility or Basis for Objection |
|---|---|---|
| | **POTENTIAL TRIAL EXHIBITS** | |
| 143 | Photographs of Unfinished "Code Keeper" | Hosea Objection – relevance |
| 144 | Photographs of Finished "Code Keeper" | Hosea Objection – relevance |
| 145 | Photographs of Unfinished "S-47" | Hosea Objection – relevance |
| 146 | Photographs of Unfinished "S-47" | Hosea Objection - relevance |
| 147 | Invoices and accompanying documentation from BDP International, Inc. (BDP 00001-00347) | Thomas & Betts Objection – See Thomas & Betts' Appeal of Magistrate's Order and Motions *in Limine* |
| 148 | Affidavit of Janice Santillo | Thomas & Betts Objection – Hearsay, Thomas & Betts has not been provided with a copy of the affidavit for review, and Thomas & Betts reserves all objections on all bases. |
| 149 | Affidavit of William Holmes | Thomas & Betts Objection – Hearsay, Not Qualified as an Expert – Not Identified as an Expert Witness by Hosea, See Thomas & Betts Reply in Opposition to Hosea's Supplemental Response in Opposition to Thomas & Betts' Motion for Summary Judgment. |
| 150 | Affidavit of Joel Brown | Thomas & Betts Objection – Hearsay, Does Not Comply with Rule 902 F.R. E., Not on Hosea's Pretrial Witness List or Pretrial Disclosures, See Thomas & Betts' Appeal of Magistrate's Order and Motions *in Limine*. |
| 151 | Summary of Outsourcing Costs prepared by Selena Francis | Thomas & Betts Objection - Thomas & Betts has not been provided with a copy of the affidavit for review, and Thomas & Betts reserves all objections on all bases. |

## WITNESSES

**A.      Plaintiff/Counter-Defendant Thomas & Betts' Witnesses:**

Thomas & Betts will call the following witnesses:

1.      Michael Pratt

2.      Graciela Hager[5]

3.      Matthew D. Orr (by deposition)

4.      Hector Sandoval (by deposition)[6]

5.      Juan Contreras (by deposition)

6.      Hector Terrones (by deposition)

7.      Nemorio Loera Alvarado (by deposition)

8.      Felipe Ornelas a/k/a Salvador Aguilera (by deposition)

9.      Colin Dean (by deposition)

10.     Janice Santillo (by deposition)

11.     Terrance Xavier Trainor (by deposition)

12.     Dave Troutman - ITL Machinery Services

        Mr. Troutman is a witness who will give expert testimony.  Mr. Troutman will testify that the value of Die Casting Machine No. 2 which was destroyed on September 6, 2002, was $150,000 - $200,000.

Thomas & Betts may call the following witnesses:

---

[5] Graciela Hager was identified in Thomas & Betts' June 10, 2004, Responses to Hosea's First Set of Interrogatories as a person with "knowledge with regard to calculation of damages resulting from outsourcing of production".
[6] Rule 32 allows the use of the depositions of Thomas & Betts' employees who reside in Mexico.  *See* Thomas & Betts' Response to Hosea's Objection in the Proposed Pretrial Order to the Admission into Evidence of the Deposition Testimony of Thomas & Betts' Employees Located in Mexico filed on September 22, 2005.

1.      Any witness identified or called by Hosea Project Movers, LLC ("Hosea") and any witness necessary for rebuttal.  Thomas & Betts also may read the deposition testimony of Hosea's representatives, David Hosea, William Holmes and Ernie Liggett, as well as Salvador Aguilera.

**B.      Defendant/Counter-Claimant Hosea's Witnesses:**

Defendant states that it reserves the right to call the following witnesses at trial in this matter:

1.      Ernie Liggett

2.      David Hosea

3.      William Holmes

4.      Janice Santillo

5.      Salvador Aguilera

6.      Terrance Xavier Trainor (by deposition)

7.      Hector Sandoval (by deposition)

8.      Juan Contreras (by deposition)

9.      Nemorio Loera Alvarado (by deposition)

10.    Hector Terrones (by deposition)

11.    George Kuharsky (by deposition)

12.    Matthew Orr (by deposition)

13.    Michael Pratt (by deposition)

14.    Any witness listed by Plaintiff Thomas & Betts Corporation ("Thomas & Betts").

15.    Any witness necessary for rebuttal testimony.

C.     **Defendant's Objections to Plaintiff's Witnesses:**

Defendant Hosea objects to the following witnesses listed by Plaintiff:

1.     Graciela Hager – not previously disclosed in initial disclosures.

2.     Dave Troutman – not qualified as an expert under Fed.R.Evid. 702-703.

3.     Hector Sandoval – Mr. Sandoval is an employee of Thomas & Betts and therefore is available under the Rules of Civil Procedure.

4.     Juan Contreras – Mr. Contreras is an employee of Thomas & Betts and therefore is available under the Rules of Civil Procedure.

5.     Hector Terrones – Mr. Terrones is an employee of Thomas & Betts and therefore is available under the Rules of Civil Procedure.

6.     George Kuharsky – Mr. Kuharsky is an employee of Thomas & Betts and therefore is available under the Rules of Civil Procedure.

7.     Michael Pratt – Mr. Pratt is an employee of Thomas & Betts and therefore is available under the Rules of Civil Procedure.

## DEPOSITION TESTIMONY

The parties may use deposition testimony for purposes of impeachment, and the parties reserve the right to designate additional deposition testimony after the Court's rulings on the parties' motions *in limine*.

A.     **Plaintiff/Counter-Defendant Thomas & Betts' Deposition Designations:**

The portions of following depositions set out below will be read into the record by the Thomas & Betts[7]:

---

[7] Hosea's objections, if any, are noted underneath each designation.

1.    Deposition of Hector Sandoval taken on April 20, 2005:

    Page 4, Lines 7-8
    Page 4, Line 18 through Page 7, Line 1
    Page 7, Line 5 through Page 11, Line 22
    Page 12, Line 2 through Page 15, Line 6
    Page 15, Lines 12-13
    Page 15, Line 15 through Page 16, Line 23
    Page 17, Line 13 through Page 18, Line 20
        (Hosea objection to Pg. 17, Ln. 13 – Pg. 18, Ln. 20 on the basis that Mr.
        Sandoval has no personal knowledge.)
    Page 19, Line 4 through Page 20, Line 15
        (Hosea objection to Pg. 19, Ln. 4-10 on the basis that Mr. Sandoval has no
        personal knowledge.)
    Page 20, Line 18 through Page 21, Line 10
    Page 21, Line 12 through Page 22, Line 16
    Page 22, Line 18 through Page 23, Line 16
    Page 23, Line 20 through Page 25, Line 2
    Page 25, Line 16 through Page 26, Line 22
    Page 26, Line 25 through Page 27, Line 12
    Page 27, Line 18 through Page 28, Line 6
    Page 28, Line 9 through Page 28, Line 14
    Page 34, Line 19 through Page 35, Line 3
    Page 35, Line 12 through Page 37, Line 9
    Page 38, Lines 4-21
    Page 42, Lines 2-12
    Page 42, Lines 15-20
    Page 44, Lines 12-21
    Page 50, Lines 6-8
    Page 57, Lines 17-25

2.    Deposition of Juan Contreras taken on April 20, 2005:

    Page 4, Lines 12-13
    Page 5, Line 3 (starting with the second "Sr.") through Page 12, Line 20 (through
    the word "presses")
    Page 12, Line 23 through Page 13, Line 18
    Page 13, Line 21 through Page 17, Line 6
    Page 17, Line 8 through Page 18, Line 1
    Page 18, Lines 7-15
    Page 18, Line 17 through Page 19, Line 6
    Page 19, Lines 11-24
    Page 20, Lines 4-15
    Page 20, Lines 17-22
    Page 20, Line 24 through Page 21, Line 13
    Page 21, Line 23 (starting with the word "What") through Page 22, Line 11

Page 22, Lines 14-25
Page 23, Line 3
Page 23, Lines 5-9
Page 23, Line 11
Page 23, Line 18 through Page 24, Line 1
Page 24, Line 17 through Page 25, Line 6
  (Hosea objection to Pg. 25, Ln. 4-10 on the basis that Mr. Contreras has no personal knowledge.)
Page 25, Line 8 through Page 26, Line 2
Page 26, Line 4
Page 26, Line 11 through Page 28, Line 10
Page 28, Line 14 (starting with the word "they're") through Page 28, Line 20
Page 28, Line 24 through Page 29, Line 19
Page 29, Lines 21-22
Page 30, Lines 1-21
  (Hosea objection to Pg. 30, Ln. 1-15 on the basis that Mr. Contreras has no personal knowledge.)
Page 32, Lines 5-11
  (Hosea objection to Pg. 32, Ln. 5-7 on the basis of relevancy.)
Page 32, Line 13 through Page 33, Line 11
  (Hosea objection to Pg. 32, Ln. 8-21 on the basis of hearsay.)
Page 33, Line 21 through Page 35, Line 10
  (Hosea objection to Pg. 34, Ln. 8-15 on the basis of hearsay.)
Page 35, Line 12 through Page 36, Line 5
Page 36, Lines 7-14
Page 36, Line 16 through Page 37, Line 6 (through the word "leveling")
Page 37, Line 10 through Page 47, Line 3
  (Hosea objection to Pg. 44, Ln. 13 – Pg. 45, Ln. 7 on the basis that the underlying document includes outsourcing unrelated to the damage to Machine #2, and therefore irrelevant.)

  (Hosea objection to Pg. 46, Ln. 15–18 on the basis that the underlying document includes outsourcing unrelated to the damage to Machine #2, and therefore irrelevant.)
Page 47, Lines 7-11
Page 61, Line 23 through Page 62, Line 15
Page 62, Line 22 through Page 63, Line 8
Page 65, Line 19 through Page 66, Line 9
Page 67, Lines 1-13
Page 69, Line 15 through Page 70, Line 14
Page 71, Lines 1-20
Page 72, Line 15 through Page 73, Line 2
Page 73, Line 16 through Page 74, Line 6
Page 75, Lines 11-24
Page 77, Lines 5-14
Page 81, Lines 6-21

Page 84, Lines 3-5
Page 84, Lines 8-12
Page 84, Lines 22-23
Page 86, Lines 3-14
Page 86, Line 19 through Page 87, Line 1
Page 87, Lines 4-5
Page 87, Line 7
Page 87, Line 15 through Page 89, Line 1
Page 91, Line 17 through Page 92, Line 20
Page 92, Line 23 through Page 93, Line 3
Page 93, Lines 11-15
Page 101, Lines 6-10
Page 101, Line 13 through Page 102, Line 1
Page 102, Lines 10-12
Page 104, Lines 13-21
Page 107, Line 7 (starting with the word "Did") through Page 107, Line 8
Page 107, Line 11 through Page 108, Line 1
Page 108, Lines 4-5
Page 109, Lines 12-20
Page 110, Lines 5-10
Page 113, Lines 10-18
Page 116, Line 13 through Page 117, Line 12
Page 118, Line 22 through Page 119, Line 1
Page 123, Lines 13-15
Page 123, Line 17
Page 124, Lines 2-8
Page 125, Line 19 through Page 126, Line 13
Page 127, Lines 14-22
Page 127, Line 24
Page 127, Line 25 through Page 128, Line 4
Page 128, Lines 6-13
Page 128, Line 15

3.    Deposition of Hector Terrones taken on April 19, 2005:

Page 4, Lines 7-8
Page 4, Line 24 through Page 6, Line 11 (through the word "responsible")
Page 6, Line 14 through Page 9, Line 1
Page 9, Line 8 through Page 10, Line 13
Page 11, Lines 1-18
Page 11, Line 24 through Page 13, Line 8
Page 13, Lines 12-13
Page 13, Lines 17-23
Page 14, Line 1 through Page 16, Line 14
Page 16, Line 19 through Page 18, Line 4
Page 18, Line 6 through Page 21, Line 9

Page 21, Lines 17-21
Page 21, Line 25 through Page 23, Line 7
Page 23, Line 19 (starting with the word "Let's") through Page 25, Line 5
Page 25, Line 6 (starting with the word "What") through Page 26, Line 25
Page 27, Lines 2-24
Page 28, Lines 6-22
Page 28, Line 24 through Page 29, Line 24
Page 30, Lines 1-16
Page 30, Lines 18-24
Page 31, Lines 1-20
    (Hosea objection to Pg. 31, Ln. 1-20 on the basis that the underlying documents do not depict the machines in question and are therefore irrelevant.)
Page 31, Line 22 through Page 32, Line 13
Page 31, Line 15
Page 70, Line 11 (starting with the word "With") through Page 71, Line 4
Page 71, Lines 10-25

Hosea Project Movers' Counter-designations in rebuttal:
Page 49, Ln 8 – Page 50, Ln. 20
Page 50, Ln. 25 – Page 51, Ln. 12
Page 51, Ln. 19 – Page 52, Ln. 5
Page 53, Ln. 2-25
Page 54, Ln. 2-6

4.    Deposition of Nemorio Loera Alvarado taken on April 19, 2005

Page 4, Lines 7-25
Page 5, Lines 4 through Page 6, Line 15
Page 6, Line 19 (starting with the word "If") through Page 8, Line 12
Page 8, Line 14 through Page 9, Line 1
Page 9, Lines 3-19
Page 9, Lines 21-24
Page 10, Line 2 through Page 11, Line 7
Page 11, Line 9 through Page 13, Line 18
Page 15, Line 8 through Page 18, Line 6
Page 21, Lines 3-7
Page 21, Line 18 through Page 22, Line 7
Page 25, Line 20 through Page 26, Line 4
Page 27, Lines 16-23
Page 29, Lines 12-17
Page 32, Lines 17-19
Page 35, Line 3 through Page 36, Line 20

Hosea Project Movers' counter-designations in rebuttal:
        Page 24, Ln. 16 – Page 25, Ln. 12
        Page 25, Ln. 16-19

5.      Deposition of Felipe Ornelas a/k/a Salvador Aguilera taken on April 19, 2005[8]:

        Page 4, Line 6 through Page 5, Line 4
        Page 5, Lines 13-14
        Page 5, Lines 19-24
        Page 6, Line 20 through Page 7, Line 10
        Page 7, Line 24 through Page 8, Line 12
        Page 8, Lines 13-19
        Page 8, Lines 20-24
        Page 9, Lines 3-11
        Page 9, Line 22 through Page 10, Line 11
        Page 10, Line 22 through Page 11, Line 13
        Page 11, Line 16
        Page 11, Line 21 through Page 12, Line 25
        Page 14, Lines 4-13
        Page 15, Line 9 through Page 16, Line 25
        Page 17, Lines 2-19
        Page 17, Lines 21-24
        Page 17, Line 25 through Page 19, Line 4
        Page 19, Lines 6-15
        Page 20, Lines 5-7
        Page 20, Line 9 through Page 21, Line 3
        Page 23, Line 22 (starting with the word "First" through Page 23, Line 25
        Page 24, Line 14 (starting with the word "Did") through Page 26, Line 8
        Page 26, Lines 10-11
        Page 27, Line 9 (starting with the word "You") through Page 28, Line 16
        Page 28, Line 18 through Page 30, Line 4
        Page 30, Lines 11-13
        Page 30, Line 21 through Page 32, Line 19
        Page 33, Lines 2-8
        Page 33, Lines 18-20
        Page 34, Line 6 through Page 35, Line 15
        Page 35, Lines 19-24
        Page 36, Line 14 through Page 38, Line 1
        Page 38, Line 2 (starting with the word "While") through Page 38, Line 22
        Page 39, Lines 3-24
        Page 39, Line 25 through Page 40, Line 18
        Page 40, Lines 19-23
        Page 40, Line 24 through Page 43, Line 9
        Page 43, Line 22 through Page 44, Line 7

---

[8] The following portions of Mr. Ornelas' deposition testimony are being designated in the event Mr. Ornelas does not appear in person to testify at the trial.

Page 44, Lines 9-10
Page 44, Line 12 through Page 45, Line 19
Page 47, Lines 18-19[9]
Page 47, Lines 21-23[9]
Page 47, Line 25 through Page 48, Line 1[9]
Page 48, Line 18 through Page 49, Line 2[9]
Page 49, Lines 12-14
Page 50, Line 5 through Page 52, Line 6
Page 52, Lines 17-20
Page 52, Lines 22 through Page 53, Line 8
Page 53, Line 20 through Page 54, Line 1
Page 54, Lines 12-13
Page 54, Line 18 through Page 56, Line 17
Page 56, Line 21 through Page 57, Line 10
Page 57, Line 23 (starting with the word "On") through Page 58, Line 5
Page 58, Lines 18-22
Page 59, Lines 1-11

6.      Deposition of Colin Dean taken on April 13, 2005:

Page 3, Lines 8-10
Page 3, Line 15-22
Page 5, Line 15 through Page 6, Line 23
Page 7, Line 5 through Page 8, Line 4
Page 9, Line 13 through Page 10, Line 11
Page 10, Line 14 through Page 12, Line 6
Page 12, Line 25 through Page 13, Line 3
Page 20, Lines 3-13

7.      Deposition of Janice Santillo taken on April 13, 2005:

Page 3, Lines 8-15
Page 3, Line 21 through Page 4, Line 9
Page 4, Lines 13-18
Page 4, Line 25 through Page 6, Line 12
Page 6, Line 21 through Page 8, Line 3
Page 8, Line 18 through Page 12, Line 13
Page 12, Line 25 (starting with the word "So") through Page 14, Line 10
Page 14, Line 17 through Page 16, Line 11
Page 16, Line 17 through Page 17, Line 22
Page 18, Lines 4-22
Page 20, Lines 11-21
Page 21, Lines 7-25

---

[9] At the time Thomas & Betts included this designation in its Rule 26(a)(3) Pretrial Disclosures, the Court has not yet entered its Order on Pending Motions. The Court's ruling makes this designation unnecessary and Thomas & Betts withdraws its designation of this testimony.

Page 23, Line 16 (starting with the word "But") through Page 23, Line 25
Page 24, Lines 4-5
Page 24, Lines 12-19
Page 51, Line 22 through Page 52, Line 2
Page 53, Line 13 through Page 54, Line 6
Page 61, Line 8 through Page 62, Line 22
Page 63, Line 15 through Page 64, Line 11
Page 65, Line 14 through Page 66, Line1
Page 66, Lines 10-21
Page 67, Lines 1-7
Page 68, Lines 20-21
Page 69, Line 3 through Page 71, Line 15
Page 72, Line 15 through Page 75, Line 15
Page 76, Lines 2-18
Page 77, Line 6 through Page 78, Line 9
Page 80, Line 6 through Page 81, Line 16
Page 81, Line 25 through Page 82, Line 23
Page 83, Lines 12-25
Page 84, Line 8 through Page 85, Line 25
Page 89, Line 8 through Page 90, Line 5
Page 90, Lines 14-17
Page 90, Lines 21-24

8.    Deposition of Matthew D. Orr taken on January 24, 2005:

Page 5, Lines 5-7
Page 5, Line 21 through Page 6, Line 5
Page 6, Line 15 (starting with the word "All") through Page 6, Line 20
Page 7, Lines 3-25
Page 8, Lines 3-13
Page 8, Line 16 through Page 9, Line 10
Page 9, Line 13 through Page 13, Line 6
Page 13, Line 11 through Page 14, Line 15
Page 15, Line 7 through Page 17, Line 4
Page 21, Line 22 (starting with the word "Do") through Page 22, Line 6
Page 23, Line 25 through Page 24, Line 8
Page 25, Lines 7-19
Page 33, Lines 4-8
Page 38, Lines 8-16
Page 38, Line 25 through Page 39, Line 6
Page 39, Lines 11-19
Page 49, Lines 19-22
Page 56, Line 12 through Page 57, Line 24
Page ,60 Line 11 through Page 61, Line 20
Page 65, Line 13 through Page 66, Line 14
Page 68, Line 18 through Page 69, Line 14

Page 70, Line 19 through Page 72, Line 4
Page 72, Line 22 through Page 75, Line 3
Page 81, Line 18 (starting with the word "And") through Page 82, Line 16
Page 85, Lines 5-11
Page 87, Line 5 through Page 90, Line 3

9.      Deposition of Terrance Xavier Trainor taken on April 26, 2005:

Page 5, Lines 6-7
Page 5, Line 16 through Page 35, Line 23
Page 36, Lines 19-22
Page 37, Line 17 through Page 44, Line 23
Page 50, Lines 21-24
Page 52, Line 25 through Page 53, Line 2
Page 55, Lines 11-13
Page 55, Line 15 through Page56, Line 10
Page 58, Lines 18-23
Page 59, Lines 12-16
Page 59, Lines 21-23
Page 63, Line 15 through Page 64, Line 21
Page 70, Lines 9-12
Page 71, Lines 15-19
Page 71, Line 22 through Page 72, Line 13
Page 74, Lines 1-16
Page 75, Lines 18-20
Page 76, Line 2
Page 76, Line 3 through Page 79, Line 2
Page 79, Line 19 through Page 80, Line 6
Page 80, Lines 20-24
Page 81, Lines 3-8
Page 81, Line 15 through Page 82, Line 25
Page 83, Lines 6-19
Page 94, Lines 18-21
Page 98, Line 15 through Page 102, Line 16
Page 104, Lines 8-15
Page 104, Lines 21-23
Page 105, Lines 6-23

**A.      Defendant/Counter-Claimant Hosea's Deposition Designations:**

Hosea reserves the right to read into the record the following portions of the depositions

set out below[10]:

_____

[10]  Thomas & Betts' objections, if any, are noted underneath each designation.

56

1.    Deposition of Terrance Xavier Trainor, taken on April 26, 2005

Page 50, Line 4-20
Page 51, line 24 to page 52, line 24
Page 55, line 5-10
Page 58, line 10-17
Page 58, line 24 to page 59, line 11
Page 68, line 7 to line 25
    (Thomas & Betts objects to Page 68, Lines 22-25 on the basis that Mr. Trainor has no personal knowledge of this issue.)
Page 69, line 3 to line 24
Page 70, line 20 to page 71, line 14
Page 72, line 14 to page 73, line 3
Page 75, line 8 to line 13
Page 75, line 21-25
Page 76 line 3-11
Page 77, line 23 to page 78, line 7
Page 79, line 3-18
Page 80, line 7-19
Page 82, line 22 to page 83, line 5
Page 95, line 4-16
    (Thomas & Betts objects to Page 95, Lines 4-16 on the basis that the testimony is hearsay and Mr. Trainor has no personal knowledge of these issues.)
Page 96, line 2-11
Page 102, line 21 to page 103, line 15
Page 103, line 17 to page 104, line 7
Page 104, line 16-20
Page 104, line 24 to page 105, line 1
Page 106, line 3-18

2.    Deposition of Hector Sandoval taken April 20, 2005

Page 29, line 21 to page 30, line 12
Page 31, line 3-11
Page 32, line 17 to page 33, line 13
Page 33, line 22 to page 34, line 18
Page 40, line 3-12
Page 40, line 16-20
Page 41, line 2-22
Page 44, line 22 to page 45, line 14
    (Thomas & Betts objects to Page 44, Line 22 through Page 45, Line 14 on the ground that the testimony is irrelevant.)
Page 47, line 12-22
Page 49, line 13 to page 50, line 5
Page 50, line 13-20

Page 51, line 13-18
Page 51, line 22 to page 52, line 1
Page 53, line 22 to page 54, line 4
Page 54, line 8-24
    (Thomas & Betts objects to Page 54, Lines 8-24 on the ground that the testimony is irrelevant.)
Page 54, line 15-24
    (Thomas & Betts objects to Page 54, Lines 15-24 on the ground that the testimony is irrelevant)
Page 63, line 15 to page 64, line 8
    (Thomas & Betts objects to Page 63, Line 15 through Page 64, Line 8 on the ground that the testimony is irrelevant.)
Page 68, line 25 to page 69, line 16
Page 69, line 20 to page 70, line 11

3.    <u>Deposition of Juan Contreras taken April 20, 2005</u>

Page 54, Line 7 to page 55, line 13
    (Thomas & Betts objects to Page 54, Line 7 through Page 55, Line 13 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)
Page 55, line 15-16
    (Thomas & Betts objects to Page 55, Lines 15-16 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)
Page 55, line 18 to page 56, line 2
    (Thomas & Betts objects to Page 55, Line 18 through Page 56, Line 2 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)
Page 56, line 5-8
    (Thomas & Betts objects to Page 56, Lines 5-8 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)
Page 56, line 11-13
    (Thomas & Betts objects to Page 56, Lines 11-13 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)
Page 56, line 16-20
    (Thomas & Betts objects to Page 56, Lines 16-20 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)
Page 56, line 23 to page 57, line 16
    (Thomas & Betts objects to Page 56, Line 23 through Page 57, Line 16 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)

Page 57, line 19-23
> (Thomas & Betts objects to Page 57, Lines 19-23 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)

Page 58, line 1-4
> (Thomas & Betts objects to Page 58, Lines 1-4 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)

Page 58, line 6-9
> (Thomas & Betts objects to Page 58, Lines 6-9 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)

Page 58, line 11 to page 59, line 4
> (Thomas & Betts objects to Page 58, Line 11 through Page 59, Line 4 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)

Page 59, line 6
> (Thomas & Betts objects to Page 59, Line 6 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)

Page 59, line 10-16
> (Thomas & Betts objects to Page 59, Lines 10-16 on the grounds that the testimony is irrelevant and is the subject of a Thomas & Betts motion *in limine* which will be filed.)

Page 62, line 16-21
Page 63, line 14 to page 65, line 18
> (Thomas & Betts objects to Page 63, Line 18 through Page 64, Line 11 on the ground that the testimony is irrelevant.)

Page 66, line 10-25
Page 69, line 12-14
Page 70, line 15-22
Page 71, line 21 to page 72, line 4
Page 78, line 20 to page 79, line 4
Page 79, line 20 to page 80, line 12
Page 80, line 19-21
Page 80, line 24 to page 81, line 5
Page 81, line 22 to page 82, line 13
Page 82, line 15 to page 83, line 22
Page 84, line 13-21
Page 84, line 24 to page 85, line 20
Page 85, line 23 to page 86, line 2
Page 90, line 4-6
Page 90, line 9-20
Page 93, line 16-23
Page 93, line 25 to page 94, line 7
Page 94, line 14-19

Page 94, line 23 to page 95, line 6
Page 95, line 8-25
Page 96, line 11-25
Page 97, line 3-25
    (Thomas & Betts objects to Page 97, Lines 15-25 on the ground that the testimony is irrelevant.)
Page 98, line 25 to page 99, line 7
Page 99, line 10-21
Page 99, line 23-25
    (Thomas & Betts objects to Page 99, Lines 23-25 on the ground that the testimony is irrelevant.)
Page 100, line 3 to page 101, line 5
    (Thomas & Betts objects to Page 100, Line 3 on the ground that the testimony is irrelevant.)
Page 102, line 2-4
Page 102, line 7-9
Page 102, line 19 to page 103, line 11
Page 104, line 2-12
Page 105, line 7 to page 106, line 25
Page 108, line 6-20
Page 110, line 16-19
Page 111, line 3-20
    (Thomas & Betts objects to Page 111, Lines 13-20 on the ground that the testimony is irrelevant.)
Page 111, line 25 to page 112, line 3
Page 112, line 8-15
Page 113, line 19 to page 114, line 18
Page 114, line 21 to page 115, line 5
Page 115, line 7 to page 116, line 12
Page 117, line 13 to page 118, line 21
    (Thomas & Betts objects to Page 117, Lines 13-20 on the ground that the testimony is irrelevant.)

4.    <u>Deposition of Nemorio Loera Alvarado taken April 19, 2005</u>

Page 26, line 20-22
Page 27, line 5-15
Page 27, line 24 to page 29, line 11
Page 29, line 18 to page 30, line 18
Page 30, line 24 to page 31, line 10
Page 32, line 3-16

5.    <u>Deposition of Hector Terrones taken April 19, 2005</u>

Page 32, line 23 to page 33, line 4
Page 36, line 7 to page 37, line 8

Page 42, line 5-16
Page 43, line 15-21
Page 45, line 6-14
    (Thomas & Betts objects to Page 45, Lines 6-14 on the ground that the
    testimony is irrelevant.)
Page 45, line 18-21
    (Thomas & Betts objects to Page 45, Lines 18-21 on the ground that the
    testimony is irrelevant.)
Page 46, line 11-14
    (Thomas & Betts objects to Page 46, Lines 11-14 on the ground that the
    testimony is irrelevant.)
Page 46, line 22 to page 48, line 2
    (Thomas & Betts objects to Page 46, Line 22 through Page 48, Line 2 on
    the ground that the testimony is irrelevant.)
Page 57, line 9-21
Page 60, line 9 to page 61, line 10
Page 61, line 23 to page 62, line 17
Page 63, line 25 to page 65, line 21

6.    <u>Deposition of Salvador Aguilera, taken April 19, 2005</u>

Page 4, line 6-9
Page 6, line 20 to page 7, line 10
Page 9, line 3-17
Page 9, line 22 to page 10, line 2
Page 12, line 22 to page 13, line 20
Page 15, line 9
Page 16, line 23 (beginning with "On the day") to page 17, line 16
Page 20, line 5 to page 22, line 8
Page 26, line 6-8
Page 26, line 10 to page 27, line 2
Page 28, line 19 to page 31, line 7
Page 32, line 12 to page 33, line 1
Page 33, line 9-17
Page 37, line 10 to page 39, line 14
Page 43, line 17 to page 44, line 3
Page 60, line 2-6
    (Thomas & Betts objects to Page 60, Lines 2-6 on the following grounds:
    leading, no foundation, irrelevant, answer non-responsive, and lack of
    personal knowledge.)
Page 60, line 8-19
    (Thomas & Betts objects to Page 60, Lines 8-19 on the following grounds:
    leading, no foundation, irrelevant, answer non-responsive, and lack of
    personal knowledge.)
Page 60, line 21 to Page 61, line 9

(Thomas & Betts objects to Page 60, Line 21 through Page 61, Line 9 on the following grounds: leading, no foundation, irrelevant, answer non-responsive, and lack of personal knowledge.)

Page 61, line 12-14

(Thomas & Betts objects to Page 61, Lines 12-14 on the following grounds: leading, no foundation, irrelevant, answer non-responsive, and lack of personal knowledge.)

7. <u>Deposition of George Kuharsky taken May 11, 2004</u>

Page 5, line 7-15
Page 6, line 5-12
Page 9, line 7-21
Page 10, line 21 to page 11, line 1
Page 11, line 6-24
Page 15, line 7 to page 16, line 2
Page 16, line 9-14
Page 16, line 18-22
Page 17, line 12 to page 18, line 2
Page 18, line 7 to page 19, line 13
Page 19, line 24 to page 20, line 15
Page 22, line 12 to page 25, line 8
Page 25, line 17-19
Page 26, line 20 to page 28, line 1
Page 28, line 10 to page 30, line 4

8. <u>Deposition of Matthew Orr taken 1/24/2005[11]</u>

Page 5, line 5-7
Page 6, line 15 (beginning with "Tell") to Page 7, line 18
Page 10, line 7 through Page 12, line 18
Page 13, line 1 to Page 14, line 12
Page 15, line 7 to Page 28, line 14
Page 28, line 19 to Page 29, line 23
Page 30, line 1 to Page 32, line 8
Page 32, line 24 to Page 40, line 16
Page 42, line 5-18
Page 46, line 13 to Page 47, line 8
Page 47, line 17-25
Page 51, line 12 to Page 53, line 5
Page 56, line 7 to Page 58, line 21

(Thomas & Betts objects to Page 58, Lines 1-21 on the grounds that the testimony is hearsay and speculation.)

---

[11] Shortly before the deadline for the submission of the pretrial order, Hosea revised its designations of the deposition of Matthew Orr. Thomas & Betts has not had the opportunity to review Hosea's revised designations in detail and reserves the right to submit its objections to the designation of Mr. Orr's testimony.

Page 59, line 21 to Page 60, line 8
    (Thomas & Betts objects to Page 59, Line 21 through Page 60, Line 8 on the grounds that the testimony is hearsay and speculation.)
Page 60, line 16 to Page 61, line 20
Page 65, line 13 to Page 66, line 9
Page 66, line 24 to Page 71, line 4
Page 71, line 10 to Page 72, line 8
Page 72, line 10 to Page 73, line 23
Page 74, line 2-16
Page 78, line 24 to Page 79, line 15
    (Thomas & Betts objects to Page 78, Line 24 through Page 79, Line 12 on the ground that only a question and no answer was designated.)
Page 80, line 13 to Page 81, line 2
    (Thomas & Betts objects to Page 80, Line 22 through Page 81, Line 2 on the ground that the testimony is speculation.)
Page 81, line 18 (beginning with "And") to Page 82, line 20
    (Thomas & Betts objects to Page 82, Line 17 through Page 83, Line 2 on the grounds that the testimony is irrelevant, lacks foundation and is speculation.)
Page 82, line 22 to Page 83, line 1

9.    <u>Deposition of Michael Pratt taken May 11, 2004</u>[12]

Page 5, line 7-9, line 14-17
Page 6, line 6-10
Page 9, line 4 to Page 11, line 24
Page 14, line 15 to Page 17, line 17
Page 18, line 7 (beginning with "Who") to Page 19, line 1
Page 24, line 23 (beginning with "I") to Page 25, line 21
Page 26, line 6 to Page 27, line 4
Page 27, line 20 to Page 29, line 13
Page 31, line 11 to Page 33, line 8
Page 33, line 19 (beginning with "Let's") to Page 34, line 20
Page 36, line 8 to Page 37, line 6
Page 38, line 22 to Page 41, line 22
Page 46, line 2 to Page 47, line 22
Page 48, line 11 (beginning with "we") to Page 49, line 14
Page 51, line 3 to Page 52, line 11
Page 52, line 21 to Page 53, line 13
Page 55, line 23 (beginning with "Mr.") to Page 56, line 13
Page 56, line 21 (beginning with "On") to Page 58, line 18
Page 58, line 22 to Page 60, line 10
Page 61, line 12 to Page 67, line 4

---

[12] Shortly before the deadline for the submission of the pretrial order, Hosea revised its designations of the deposition of Michael Pratt. Thomas & Betts has not had the opportunity to review Hosea's revised designations in detail and reserves the right to submit its objections to the designation of Mr. Pratt's testimony.

Page 67, line 10 to Page 79, line 2
Page 80, line 1 to Page 81, line 4
Page 84, Line 18 to Page 86, line 19

## TRIAL

This case is set for a jury trial on Monday, September 26, 2005 at 9:30 a.m. The parties estimate the trial of this action will take three to four days. Counsel for the parties will file with the court, not later than two business days to the beginning of the trial, proposed jury instructions (one point per page), any special questions for voir dire examination of the jury venire, and any special interrogatories or verdict forms that they wish to submit to the jury.

## DAMAGES

**A.      Plaintiff/Counter-Defendant Thomas & Betts' Damages:**

Thomas & Betts seeks $150,000 - $200,000, plus interest, from Hosea which was the fair market value of Die Casting Machine No. 2 at the time of its destruction. Thomas & Betts is also seeking $673,227, plus interest, in damages relating to its increased outsourcing costs due to the destruction of Die Casting Machine No. 2.

Thomas & Betts seeks $81,366.53, plus interest, in damages relating to its increased outsourcing costs due to Hosea's intentional refusal to deliver Die Casting Machine No. 14. Additionally, Thomas & Betts seeks to recover from Hosea $10,288.23, plus interest, which was the amount it had to pay to another subcontractor to complete the installation and set-up of Die Cast Machine No. 14. Thomas & Betts is also entitled to punitive damages from Hosea resulting from Hosea's conversion and intentional refusal to deliver Die Casting Machine No. 14.

In the alternative to Thomas & Betts' claim for damages resulting from Hosea's fraud and breach of contract, Thomas & Betts seeks rescission of the Agreement on the basis of Hosea's fraudulent conduct.

Hosea's counterclaim is without merit, and Thomas & Betts contends that it owes no money to Hosea under any theory including under any contract.

**B.      Defendant/Counter-Claimant Hosea's Damages:**

Hosea seeks the balance of the Agreement with Thomas & Betts, which is $121,191.00, plus interest, and the balance of another contract with Thomas & Betts, which is $22,389.59, plus interest. Thomas & Betts agreed to pay these amounts, but has refused to do so.

Hosea has performed all its obligations under the contracts with Thomas & Betts, and therefore the claims asserted by Thomas & Betts have no merit and should be dismissed.

<u>**ATTORNEYS**</u>

**A.      Attorneys for the Plaintiff/Counter-Defendant Thomas & Betts:**

> Oscar C. Carr, III (#4779)
> Patrick T. Burnett (#19992)
> **GLANKLER BROWN, PLLC**
> 1700 One Commerce Square
> Memphis, Tennessee 38103
> (901) 525-1322 Telephone
> (901) 525-2389 Facsimile

**B.      Attorneys for the Defendant/Counter-Claimant Hosea:**

> M. Clark Spoden
> W. Judd Peak
> Frost Brown Todd, LLC
> 424 Church Street
> Suite 1600
> Nashville, Tennessee  37219

Copies of Thomas & Betts' attorneys' letterhead is set forth below.

# GLANKLER BROWN, PLLC
### ATTORNEYS AT LAW

| | | |
|---|---|---|
| DOWNTOWN OFFICE | OSCAR C. CARR, III | EAST OFFICE |
| ONE COMMERCE SQUARE | | 6000 POPLAR AVENUE |
| SEVENTEENTH FLOOR | REPLY TO | SUITE 100 |
| MEMPHIS, TENNESSEE 38103-2566 | DOWNTOWN OFFICE | MEMPHIS, TENNESSEE 38119-3978 |
| TELEPHONE (901) 525-1322 | DIRECT DIAL: (901) 576-1763 | TELEPHONE (901) 685-1322 |
| FACSIMILE (901) 525-2389 | E-MAIL: ocarr@glankler.com | FACSIMILE (901) 761-2454 |

=================================================================

# GLANKLER BROWN, PLLC
### ATTORNEYS AT LAW

DOWNTOWN OFFICE
ONE COMMERCE SQUARE
SEVENTEENTH FLOOR
MEMPHIS, TENNESSEE 38103-2566
TELEPHONE (901) 525-1322
FACSIMILE (901) 525-2389

PATRICK T. BURNETT

REPLY TO
DOWNTOWN OFFICE
DIRECT DIAL: (901) 576-1720
E-MAIL: pburnett@glankler.com

EAST OFFICE
6000 POPLAR AVENUE
SUITE 100
MEMPHIS, TENNESSEE 38119-3978
TELEPHONE (901) 685-1322
FACSIMILE (901) 761-2454

A copy of Hosea's counsel's letterhead is attached.

## **SPECIAL EQUIPMENT**

The parties may bring their lap top computers and may utilize the Court's audio/visual equipment.

**IT IS SO ORDERED**, on this the 31st day of October, 2005.

Honorable Samuel H. Mays, Jr.
United States District Court Judge

**APPROVED AS TO FORM:**

Oscar C. Carr, III (#4779)
Patrick T. Burnett (#19992)
**GLANKLER BROWN, PLLC**
1700 One Commerce Square
Memphis, Tennessee 38103
(901) 525-1322 Telephone
(901) 525-2389 Facsimile

Attorneys for Plaintiff/Counter-Defendant
Thomas & Betts Corporation

_M. Clark Spoden by Oscar Com_
M. Clark Spoden
W. Judd Peak
Frost Brown Todd, LLC
424 Church Street
Suite 1600
Nashville, Tennessee 37219

Attorneys for Defendant/Counter-Claimant
Hosea Project Movers, LLC



UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 236 in
 case 2:02-CV-02953 was distributed by fax, mail, or direct printing on
November 4, 2005 to the parties listed.

---

Patrick T. Burnett
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

M. Clark Spoden
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

W. Judd Peak
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

Oscar C. Carr
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT